[No. S152695. July 23, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
BARRY LANE ANDERSON, Defendant and Appellant.

## COUNSEL

Kat Kozik, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Mary Jo Graves and Michael P. Farrell, Assistant Attorneys General, Janet E. Neeley, Charles A. French and Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CORRIGAN, J.**—This case concerns two questions we did not resolve in *People v. Seel* (2004) 34 Cal.4th 535 [21 Cal.Rptr.3d 179, 100 P.3d 870] (*Seel*). (1) Do double jeopardy principles prohibit retrial when a jury has convicted the defendant of an offense but deadlocked on an attached penalty allegation? (2) If retrial is permissible, must it encompass the underlying offense, or may the penalty allegation be retried in isolation? We conclude that, in such circumstances, mistried penalty allegations may be retried, and the retrial need only encompass the mistried enhancements.

### BACKGROUND

In January 2003, Donna Divens saw A.B. and E.M. following defendant around a block of units in the apartment complex where Divens lived. Both girls were five years old. Divens followed them around a corner and saw A.B.

standing with her pants down while defendant squatted behind her. E.M. was standing nearby. When Divens appeared, defendant quickly departed. The girls explained they had followed him because he promised them candy and kittens.

Defendant was charged in count one with committing a lewd and lascivious act on A.B., a child five years of age. (Pen. Code, § 288, subd. (a).)[1] That charge was followed by two paragraphs containing notices that the offense was a serious felony (§ 1192.7, subd. (c)) and that conviction would require defendant to register as a sex offender (§ 290). The complaint went on to allege, in connection with count one, that defendant kidnapped A.B. "for the purpose of committing that . . . offense," in violation of section 667.8, subdivision (b), and that the kidnapping fell within the meaning of section 667.61, subdivision (e)(1). Under section 667.61, a defendant who is convicted of a lewd and lascivious act and also found to have kidnapped the victim for that purpose must be sentenced to 15 years to life imprisonment. (§ 667.61, subds. (b), (e)(1).) The penalty for a lewd and lascivious act without a kidnapping allegation is a term of three, six or eight years. (§ 288, subd. (a).) Section 667.61, which provides indeterminate sentences for felony sex crimes committed under particular circumstances, is sometimes called the "One Strike" law. (*People v. Rayford* (1994) 9 Cal.4th 1, 8 [36 Cal.Rptr.2d 317, 884 P.2d 1369].) The complaint also alleged in separate substantive counts that defendant kidnapped A.B. (count three) and E.M. (count four) for the purpose of committing a lewd and lascivious act (§ 207, subd. (b)), attempted to commit the lewd act offense on E.M. (§§ 664, 288, subd. (a)) (count two), and possessed child pornography (§ 311.11, subd. (a)) (counts five through 15).

During the second day of deliberations, the jury announced it had reached verdicts on the lewd act and pornography charges but could not reach a verdict on the substantive kidnapping counts or on the section 667.61, subdivision (e)(1) kidnapping allegations. After further deliberations produced the same result, the court received the jury's verdicts of guilty on the lewd act, attempted lewd act and child pornography charges, and declared a mistrial on the kidnapping counts and factual sentencing allegations. Defendant waived time for sentencing, and the court scheduled a retrial on the mistried counts and sentencing allegations. Months later, but before defendant's second trial, the prosecutor amended the information to add another, harsher, kidnapping allegation under the One Strike law in connection with the crime against A.B. In addition to the allegation of kidnapping under

---

[1] All statutory references are to the Penal Code unless otherwise noted.

section 667.61, subdivision (e)(1), the amended information alleged defendant had kidnapped A.B. to commit a lewd act *and* that the movement substantially increased the risk of harm. (§ 667.61, subd. (d)(2).) This second factual allegation, if found true, carried a punishment of 25 years to life imprisonment. (§ 667.61, subd. (a).) Defendant did not object to the amendment.

At his second trial, defendant stipulated that he had been convicted of molesting one little girl, attempting to molest the other, and of possessing child pornography. The jury in this second trial found defendant guilty of both substantive kidnapping charges (§ 207, subd. (b)) and found true both the 15-year and 25-year factual allegations charged in connection with the crimes against A.B. After receiving these verdicts, the court sentenced defendant to an indeterminate term of 25 years to life imprisonment under the One Strike law (§ 667.61, subd. (d)(2)) for violation of section 288, subdivision (a), plus a consecutive determinate term of 11 years for kidnapping E.M. in violation of section 207, subdivision (b). (A three-year sentence for the attempted lewd act against E.M. was ordered to run concurrently, and an 11-year sentence for the kidnapping of A.B. was stayed pursuant to § 654.)

Defendant appealed on several grounds. The Court of Appeal rejected all but one of his arguments, on an issue not contested here.[2] In all other respects, it affirmed the judgment. We granted review to decide whether federal and state double jeopardy principles allowed retrial of the factual sentencing allegation of kidnapping on which defendant's first jury deadlocked and, if so, whether retrial could concern the sentencing allegation alone or had to encompass the underlying lewd act charge.[3]

---

[2] The Court of Appeal interpreted subdivisions (d)(2) and (e)(1) of section 667.61 as being mutually exclusive. Thus, a true finding under subdivision (d)(2) would preclude imposition of an additional penalty under subdivision (e)(1). The trial court had imposed an indeterminate sentence of 15 years to life for the jury's subdivision (e)(1) finding but stayed it under section 654. The Court of Appeal's ruling meant the finding and sentence had to be stricken, not stayed. This interpretation is not before us and we express no opinion thereon.

[3] Defendant did not enter a plea of once in jeopardy before his second trial; therefore, the double jeopardy issues raised herein were not preserved for review. (*People v. Memro* (1995) 11 Cal.4th 786, 821 [47 Cal.Rptr.2d 219, 905 P.2d 1305].) Because defendant claims his attorney rendered ineffective assistance of counsel by failing to assert the plea, however, the Court of Appeal addressed the merits of the double jeopardy arguments. We do as well. (See *People v. Scott* (1997) 15 Cal.4th 1188, 1201 [65 Cal.Rptr.2d 240, 939 P.2d 354]; *People v. Marshall* (1996) 13 Cal.4th 799, 824, fn. 1 [55 Cal.Rptr.2d 347, 919 P.2d 1280].)

## DISCUSSION

### I. *Overview of California Sentencing Law*

 "Every crime consists of a group of elements laid down by the statute or law defining the offense and every one of these elements must exist or the statute is not violated. This group of essential elements is known as the 'corpus delicti,' the body or the elements of the crime. [Citation.]" (Fricke, Cal. Criminal Law (1970) p. 26.) A criminal offense is thus a collection of specific factual elements that the Legislature has chosen to define as a crime. Some substantive crimes are further divided into degrees. For example, the substantive crime of burglary is defined by its elements as: (1) entry into a structure, (2) with the intent to commit theft or any felony. (§ 459; see also CALCRIM No. 1700.)[4] If these elements are proven, the crime of second degree burglary has been committed. (§§ 459, 460, subd. (b).) However, if, in addition to these elements, there is also proof that the structure was inhabited at the time of the entry, the crime is elevated from second degree to first degree burglary. (§ 460, subd. (a); see also CALCRIM No. 1701.)[5] First degree burglary is a greater substantive offense than second degree burglary because it requires proof of all the elements of second degree burglary *and* the additional element that the area entered was used as a dwelling.

The Legislature has prescribed a range of determinate sentences for most substantive crimes. (See § 1170.)[6] For example, first degree burglary is punished by a term of either two, four or six years in state prison. (§ 461.)

The Legislature has also concluded that some substantive crimes should be punished more severely because of particular facts attendant upon their commission. The Legislature has implemented this policy in several ways. It has provided for greater sentences if certain enhancements are pled and proven. (See Cal. Rules of Court, rule 4.405(3).) Enhancements have their own factual elements, such as the personal use of a firearm (§§ 12022.5, 12022.53) or the infliction of great bodily injury (§ 12022.7). So, a defendant

---

[4] We refer to this simplified description of burglary by way of example. The burglary statute includes within its scope entry into "any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, . . . floating home, . . . railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, . . . any house car, . . . inhabited camper, . . . vehicle . . . , when the doors are locked, aircraft . . . , or mine or any underground portion thereof . . . ." (§ 459.)

[5] Specifically, section 460 defines first degree burglary as "[e]very burglary of an inhabited dwelling house, vessel, . . . which is inhabited and designed for habitation, floating home, . . . or trailer coach . . . or the inhabited portion of any other building . . . ." (§ 460, subd. (a).)

[6] The exceptions are crimes, like murder, for which the Legislature has prescribed only indeterminate sentences. (See, e.g., § 190, subd. (a) [sentence for second degree murder is 15 years to life; sentence for first degree murder is 25 years to life].)

who takes cash from a victim by threatening to strike the victim if he does not surrender the money may be charged with robbery (§ 211). However, if the defendant points a handgun at the victim in order to obtain the money, he may be charged with the substantive crime of robbery *and* an enhancement allegation that he personally used a firearm to commit the robbery (§ 12022.5). If the jury finds that both the substantive crime and the enhancement have been proven, the defendant may be sentenced to a base term of two, three or five years for the robbery (§ 213, subd. (a)(2)) and an additional term of three, four or 10 years for the use of the firearm (§ 12022.5, subd. (a)).

The Legislature and California voters have also enacted a "parallel sentencing scheme" for repeat offenders. (*People v. Anderson* (1995) 35 Cal.App.4th 587, 592–593, 595 [41 Cal.Rptr.2d 474].) Under the "Three Strikes" law, a defendant who is accused of a felony may also be charged with having previously been convicted of other crimes. If the previous convictions meet the statutory definitions of "strikes" and are proven true, the defendant may be sentenced not to a determinate term, but to an indeterminate term of 15 or 25 years to life. (See §§ 667, 1170.12.) As with enhancements, a jury considering a Three Strikes allegation must separately determine whether the defendant has committed the new substantive felony and whether the allegations of prior strike convictions have been proven. It is well settled that if the jury's finding on a strike allegation is reversed on appeal for insufficient evidence, the allegation may be retried to a new jury. (*People v. Barragan* (2004) 32 Cal.4th 236 [9 Cal.Rptr.3d 76, 83 P.3d 480]; *People v. Monge* (1997) 16 Cal.4th 826 [66 Cal.Rptr.2d 853, 941 P.2d 1121].)

The One Strike law (§ 667.61) was added to the Penal Code in 1994. (Stats. 1994, 1st Ex. Sess., ch. 14X, § 1, p. 8570; see *People v. Hammer* (2003) 30 Cal.4th 756, 766 [134 Cal.Rptr.2d 590, 69 P.3d 436].) Like the Three Strikes law, the One Strike law is an alternative sentencing scheme, but it applies only to certain felony sex offenses. (*People v. Jones* (1997) 58 Cal.App.4th 693, 709, fn. 9 [68 Cal.Rptr.2d 506].) It mandates an indeterminate sentence of 15 or 25 years to life in prison when the jury has convicted the defendant of a specified felony sex crime (§ 667.61 [listing applicable crimes]) and has also found certain factual allegations to be true (§ 667.61, subds. (d), (e)). Most of these factual allegations concern the manner in which the underlying substantive offense was committed. As with the Three Strikes law and statutory sentencing enhancements, the jury must first decide whether all the elements of the underlying substantive crime have been proven. If not, it returns an acquittal and the case is over. If the jury convicts on the substantive crime, it then independently determines whether the factual allegations that would bring the defendant under the One Strike sentencing scheme have also been proven. Because the sentencing allegations have the potential to increase punishment, the defendant has a Sixth Amendment right

to have their truth decided by a jury. (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*).) If the jury cannot agree whether the One Strike allegations have been proven, the conviction on the substantive offense stands and a mistrial of necessity is declared as to the factual sentencing allegations. (See *People v. Bright* (1996) 12 Cal.4th 652, 661–662 [49 Cal.Rptr.2d 732, 909 P.2d 1354] (*Bright*).)[7]

Under the One Strike law, certain factual allegations may have the same elements as a substantive offense. Such was the case here. Kidnapping a child to commit a lewd and lascivious act is a substantive offense. (§ 207, subd. (b).) The same conduct may also be alleged as a factual sentencing allegation under the One Strike law. (§ 667.61, subds. (c)(4), (e)(1).) The elements of both the substantive crime and the sentencing allegation are the same. Here, the prosecution charged kidnapping as both a substantive offense and as a sentencing allegation attached to the lewd and lascivious conduct offense.

■ Defendant's first jury found him guilty of the substantive offense of committing a lewd and lascivious act on A.B. (§ 288, subd. (a).) However, because the jury could not agree about whether he kidnapped her for the purpose of committing this offense, it hung on both the substantive kidnapping charge (§ 207, subd. (b)) and the One Strike sentencing allegation (§ 667.61, subd. (e)(1)). These facts demonstrate the flaw in defendant's double jeopardy argument. It is well settled that when the jury convicts a defendant on some counts but hangs on others, resulting in a mistrial, the mistried counts may be tried to a new jury. (§ 1160.)[8] Under defendant's theory, double jeopardy would not prevent a retrial of the substantive kidnapping offenses alleged in counts three and four, but it would bar retrial for the same conduct as a factual sentencing allegation under section 667.61, subdivision (e)(1). As we will explain, this anomalous result is neither consistent with legislative intent nor compelled by constitutional mandate.

II. *Constitutional Double Jeopardy Protection*

■ The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15, of the California Constitution provide that a person may not be twice placed "in jeopardy" for the "same offense." "The double jeopardy bar protects against a second prosecution for the same offense following an acquittal or conviction, and also protects

---

[7] We disapproved *Bright* on a related ground in *Seel, supra,* 34 Cal.4th at page 542.

[8] Section 1160 provides, in relevant part: "Where two or more offenses are charged in any accusatory pleading, if the jury cannot agree upon a verdict as to all of them, they may render a verdict as to the charge or charges upon which they do agree, and the charges on which they do not agree may be tried again."

against multiple punishment for the same offense. [Citations.]" (*Bright, supra,* 12 Cal.4th at p. 660.) Although some differences in application arise, both federal and California law generally treat greater and lesser included offenses as the "same offense" for purposes of double jeopardy. (*Id.* at pp. 660–661; see *Brown v. Ohio* (1977) 432 U.S. 161, 165–169 [53 L.Ed.2d 187, 97 S.Ct. 2221].) It is upon this treatment that defendant's argument both relies and ultimately founders.

■ "The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal." (*Arizona v. Washington* (1978) 434 U.S. 497, 503 [54 L.Ed.2d 717, 98 S.Ct. 824].) The same is true when a conviction is reversed or set aside because of insufficient evidence. (*Hudson v. Louisiana* (1981) 450 U.S. 40 [67 L.Ed.2d 30, 101 S.Ct. 970]; *Burks v. United States* (1978) 437 U.S. 1 [57 L.Ed.2d 1, 98 S.Ct. 2141].) The United States Supreme Court has held that an acquittal barring a second prosecution may be implied where a jury convicts on a lesser included offense after having " 'a full opportunity to return a verdict' " on the greater charge (*Price v. Georgia* (1970) 398 U.S. 323, 328–329 [26 L.Ed.2d 300, 90 S.Ct. 1757]; see *Green v. United States* (1957) 355 U.S. 184, 191 [2 L.Ed.2d 199, 78 S.Ct. 221]), and California law has long recognized that such an "implied acquittal" bars retrial. (*People v. Fields* (1996) 13 Cal.4th 289, 299 [52 Cal.Rptr.2d 282, 914 P.2d 832] (*Fields*); *Stone v. Superior Court* (1982) 31 Cal.3d 503, 511, 518–519 [183 Cal.Rptr. 647, 646 P.2d 809].)

■ However, when a trial produces neither an acquittal nor a conviction, retrial may be permitted if the trial ended "without finally resolving the merits of the charges against the accused." (*Arizona v. Washington, supra,* 434 U.S. at p. 505.) In general, if a jury is discharged without returning a verdict, the double jeopardy bar applies unless manifest necessity required the discharge or the defendant consented to it. (*Green v. United States, supra,* 355 U.S. at p. 188.) From the time of the United States Supreme Court's decision in *United States v. Perez* (1824) 22 U.S. (9 Wheat.) 579 [6 L.Ed. 165], it has been established that the failure of a jury to agree on a verdict is an instance of "manifest necessity" permitting retrial of the defendant "because 'the ends of public justice would otherwise be defeated' " (*Richardson v. United States* (1984) 468 U.S. 317, 323–324 [82 L.Ed.2d 242, 104 S.Ct. 3081]). California's application has long been the same. "Like its federal counterpart, the state rule permits retrial following discharge of a jury that has been unable to agree on a verdict. [Citations.] The rule is codified in sections 1140 and 1141, which permit retrial following discharge of a jury after the court has determined 'there is no reasonable probability that the jury can agree.' (§ 1140; see *People v. Tong* (1909) 155 Cal. 579, 581 [102 P. 263].) Section 1160 implements the legal necessity doctrine in the multiple count situation by permitting the trial court to receive a verdict on one count and to discharge the jury with respect to another count on which the jury

deadlocked without jeopardy attaching as to that charge. [Citation.]" (*Fields, supra,* 13 Cal.4th at p. 300.)

 The jury in this case convicted defendant of committing a lewd act but deadlocked on the One Strike kidnapping allegation attached to that offense.[9] These procedural facts raise questions about whether and in what manner this sentencing allegation could be retried. If a substantive crime is charged against a defendant and the prosecution alleges additional facts bearing on sentencing, does that collective allegation of substantive crime plus sentencing factors constitute a "greater offense" than a charge of the substantive crime standing alone? We conclude a count alleging a crime plus sentencing factors is not a "greater offense" for double jeopardy purposes. Thus, if a defendant is convicted of the substantive crime but the jury deadlocks on attached factual sentencing allegations, neither federal nor state double jeopardy principles bar a retrial of those sentencing allegations.

### A. Double Jeopardy Clause Applies to Penalty Allegations

In *Bright, supra,* 12 Cal.4th 652, the defendant was charged with attempted murder. It was further alleged that the murder he attempted was willful, deliberate, and premeditated. A true finding on this allegation would have elevated his sentence from five, seven, or nine years to life imprisonment with the possibility of parole. (§ 664, subd. (a).) The jury convicted the defendant of attempted murder but could not reach a finding on the premeditation allegation. (*Bright,* at p. 658.) We considered whether federal or state double jeopardy principles prevented retrial. We held that the answer depends on the nature of the allegation. A conviction on a lesser degree of an offense is generally considered to be an implied acquittal of the greater degree. However, a jury's failure to return a verdict on a penalty allegation does not constitute an acquittal, and thus retrial of the allegation does not implicate double jeopardy principles. (*Id.* at pp. 661–662.) After much analysis, we concluded the allegation under section 664, subdivision (a) did not create a greater offense, i.e., of attempted premeditated murder, but rather constituted a penalty provision. (*Bright,* at pp. 662–669.) Accordingly, double jeopardy principles did not bar retrial of the allegation. (*Id.* at p. 671.)

We revisited this holding after the United States Supreme Court questioned the constitutional significance of the distinction between penalty provisions and elements of offenses. In *Apprendi, supra,* 530 U.S. 466, the high court ruled that, with the sole exception of facts relating to a prior conviction, "*any*

---

[9] As noted, the jury also deadlocked on charges that defendant committed the substantive crime of kidnapping (§ 207, subd. (b)); however, defendant does not claim retrial of these charges was improper. Accordingly, we restrict our discussion to issues concerning retrial of the sentencing allegation.

fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490, italics added.) The court explained that "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" (*Id.* at p. 494.) If so, regardless of whether a state labels the fact a sentencing factor or an element of an offense, the Sixth Amendment requires that it be proven to a jury beyond a reasonable doubt. (*Apprendi*, at pp. 494–495; see also *Sattazahn v. Pennsylvania* (2003) 537 U.S. 101, 111 [154 L.Ed.2d 588, 123 S.Ct. 732] (lead opn. of Scalia, J.) (*Sattazahn*).) Thus, the high court reasoned, "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." (*Apprendi, supra,* 530 U.S. at p. 494, fn. 19; see also *People v. Sengpadychith* (2001) 26 Cal.4th 316, 326 [109 Cal.Rptr.2d 851, 27 P.3d 739] (*Sengpadychith*) ["*Apprendi* treated the crime together with its sentence enhancement as the 'functional equivalent' of a single 'greater' crime."].)

Citing the "functional equivalen[ce]" language from *Apprendi,* defendant here argues that a factual allegation charged in connection with an underlying felony effectively transforms the underlying felony into a greater offense. He then maintains that a conviction of the underlying offense alone bars retrial on state and federal double jeopardy grounds of an attached penalty allegation on which the jury has deadlocked. We have not previously discussed *Apprendi*'s effect on mistried sentencing allegations, nor has the United States Supreme Court spoken to the issue directly.

In *Seel, supra,* 34 Cal.4th 535, we considered whether *Apprendi* undermined our holding in *Bright* that section 664, subdivision (a) is a penalty provision to which double jeopardy protections do not apply. *Seel* involved not a hung jury, but a reversal on appeal. Seel was convicted of attempted murder (§ 187, subd. (a)) with true findings on allegations that he acted with premeditation (§ 664, subd. (a)) and intentionally discharged a firearm (§ 12022.53, subd. (c)) during the offense. (*Seel,* at p. 540.) However, the Court of Appeal reversed the premeditation finding as unsupported by substantial evidence. It then remanded for a retrial of the allegation based on our holding in *Bright.* (*Seel,* at p. 540.) We held that a retrial of the allegation would violate double jeopardy. Because proof of the premeditation allegation exposes a defendant to significantly greater punishment than a jury's verdict of attempted murder without premeditation, we concluded *Apprendi* required the allegation to be treated as the functional equivalent of an element of a greater offense and not simply as a penalty provision without constitutional significance. (*Seel,* at pp. 548–550.) We rejected the Attorney General's argument that *Apprendi*'s reasoning extends only to Sixth Amendment jury

trial protections, noting "the high court has indicated that the principles underlying the double jeopardy clause on the one hand, and the . . . right to jury trial on the other, are not wholly distinct. [Citations.]" (*Seel*, at p. 547; see, e.g., *Sattazahn, supra*, 537 U.S. at p. 111.)

*Seel* did not completely overrule *Bright*, however, because for double jeopardy purposes the procedural posture of the cases differed in an important way. In *Seel*, the section 664, subdivision (a) finding was reversed because the evidence was insufficient as a matter of law. In *Bright*, on the other hand, the jury was unable to reach a verdict on the premeditation allegation. (*Seel, supra*, 34 Cal.4th at p. 550; *Bright, supra*, 12 Cal.4th at p. 658.) We described this difference as "[s]ignificant[]," noting " '[a] mistrial does not constitute a termination of jeopardy, and accordingly double jeopardy does not arise from the legal necessity of a mistrial. [Citation.]' ([*Bright*,] at p. 662.)" (*Seel*, at p. 550; see also *Stone v. Superior Court, supra*, 31 Cal.3d at p. 516.) As the Supreme Court made clear in *United States v. DiFrancesco* (1980) 449 U.S. 117, 130–131 [66 L.Ed.2d 328, 101 S.Ct. 426], the double jeopardy clause prohibits retrial after a conviction has been reversed for evidentiary insufficiency but allows it after a mistrial occasioned by "manifest necessity." Because *Apprendi* required the premeditation allegation to be resolved by the jury, and because the appellate court's finding of evidentiary insufficiency was a classic example of a termination of jeopardy barring retrial (*Burks v. United States, supra*, 437 U.S. 1), we concluded in *Seel* that federal double jeopardy principles barred retrial of the allegation. (*Seel*, at pp. 548–550.) We expressed no opinion on the application of these principles when, as in *Bright*, the trial court has declared a mistrial on the penalty allegation due to juror deadlock.

Defendant in this case was charged with the substantive crime of lewd and lascivious conduct on a child under age 14. (§ 288, subd. (a).) It was also alleged, as a question of fact to be proven under *Apprendi*, that he kidnapped the victim in order to commit the substantive offense. (§ 667.61, subd. (e)(1).)[10] As discussed, the One Strike law sets forth an alternative and harsher sentencing scheme for certain sex crimes, including the lewd act offense alleged here (§ 667.61, subd. (c)(8)). (*People v. Mancebo* (2002) 27 Cal.4th 735, 741 [117 Cal.Rptr.2d 550, 41 P.3d 556].) The One Strike law

---

[10] In addition to the One Strike allegation, the prosecution also alleged a kidnapping enhancement to the lewd act offense. (§ 667.8, subd. (b) [providing for additional 15-year term].) Unlike a penalty allegation that, if proven, invokes an alternate and harsher sentencing scheme, a sentencing enhancement merely adds an additional term of imprisonment to the base term imposed for an offense. (Cal. Rules of Court, rule 4.405(3); see *Bright, supra*, 12 Cal.4th at p. 656, fn. 2.) However, it appears the kidnapping enhancement was dismissed sometime during defendant's second trial. The jury did not render a verdict on the truth of the section 667.8, subdivision (b) allegation, and the judgment includes no conviction or sentence for this provision.

applies if the defendant has previously been convicted of one of seven enumerated offenses or if the current offense was committed under one or more specified circumstances. (*Ibid.*) Section 667.61, subdivision (e)(1), the allegation at issue in defendant's first trial, provides for an indeterminate sentence of 15 years to life imprisonment if the jury finds that the defendant kidnapped the victim while committing an enumerated offense. (See § 667.61, subd. (b).) Without a true finding on the section 667.61, subdivision (e)(1) allegation, a defendant can only be sentenced to a lower determinate term. (§ 288, subd. (a).) Thus, like the premeditation allegation at issue in *Bright* and *Seel*, a One Strike allegation exposes a defendant to greater punishment than would be authorized by a verdict on the offense alone. (See *Seel*, 34 Cal.4th at p. 548.)

Accordingly, unless a defendant waives its protection, the Sixth Amendment requires that a One Strike allegation be tried to a jury and proven beyond a reasonable doubt. (*Apprendi, supra*, 530 U.S. at p. 490.) Our inquiry does not end here, however, because the factual sentencing allegation in this case did not result in an acquittal or its legal equivalent (see *ibid.*), but in a mistrial. The next question is whether the double jeopardy clause permits retrial of such a factual sentencing allegation when the first trial did not result in an express or implied acquittal.

## B. *No Constitutional Bar to Retrial of Allegation After Mistrial*

▆ In general, the double jeopardy clause of the Fifth Amendment prohibits the government from prosecuting a defendant for a greater offense after it has convicted him of a lesser included offense. (*Brown v. Ohio, supra*, 432 U.S. at pp. 168–169.) However, the United States Supreme Court has recognized several exceptions to this rule. In *Jeffers v. United States* (1977) 432 U.S. 137, 151–152 [53 L.Ed.2d 168, 97 S.Ct. 2207], the court held that the *Brown* rule does not apply when the defendant expressly asks for separate trials on greater and lesser offenses. The high court likened this situation to others in which double jeopardy protection does not bar a retrial, for example, after a defendant's successful appeal for reasons other than insufficiency of the evidence, or after a mistrial has been granted at the defendant's request. (*Jeffers v. United States*, at p. 152.) "Both the trial after the appeal and the trial after the mistrial are, in a sense, a second prosecution for the same offense, but, in both situations, the policy behind the Double Jeopardy Clause does not require prohibition of the second trial." (*Ibid.*)

The same is true when the court enters a mistrial on a greater offense based on the "manifest necessity" of a juror deadlock. "[W]ithout exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords

recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." (*Arizona v. Washington, supra*, 434 U.S. at p. 509.) The high court has explained that "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy," and "the failure of the jury to reach a verdict is *not* an event which terminates jeopardy." (*Richardson v. United States, supra*, 468 U.S. at p. 325, italics added.) "The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree." (*Id.* at p. 326.)

When a jury expressly deadlocks on a greater offense and, at the same time, convicts on a lesser included offense, we have interpreted the federal authorities to mean that "the conviction on the lesser offense does not operate as an implied acquittal of the greater." (*Fields, supra*, 13 Cal.4th at p. 302.) The same principle applies under the California Constitution. (*Id.* at p. 303 ["under the double jeopardy principles embodied in the California Constitution, when jurors deadlock on a greater offense, an acquittal on that charge will not be implied by the jury's verdict of guilty on a lesser included offense"].) Thus, defendant's conviction of the underlying lewd act offense cannot be construed as an implied acquittal of the One Strike allegation because the jury expressly declared it was unable to reach a verdict on the allegation.

*Ohio v. Johnson* (1984) 467 U.S. 493, 494–496 [81 L.Ed.2d 425, 104 S.Ct. 2536], involved greater and lesser included offenses, not factual sentencing allegations. There, the United States Supreme Court rejected an argument that the double jeopardy clause precludes continued prosecution on greater offenses simply because a defendant has been convicted and sentenced on lesser included offenses. Johnson was indicted for murder and aggravated robbery and their lesser included offenses of involuntary manslaughter and grand theft. (*Ohio v. Johnson*, at p. 495.) At his arraignment, Johnson offered to plead guilty to the lesser offenses only. (*Id.* at p. 496.) The trial court accepted Johnson's guilty pleas over the state's objection and dismissed the more serious offenses on the ground that they were barred by double jeopardy. (*Id.* at pp. 494–496.) Although this ruling was upheld by Ohio's appellate courts, the United States Supreme Court disagreed, holding the double jeopardy clause did not prohibit the state from continuing to prosecute Johnson on the murder and aggravated robbery charges. (*Ohio v. Johnson*, at pp. 496, 502.)

The high court explained that continued prosecution did not implicate the prohibition on multiple punishments for the same offense (see *Brown v. Ohio, supra*, 432 U.S. at p. 165) because this protection is only meant to prevent

the government from imposing cumulative punishment, not to halt all proceedings that might ultimately lead to a cumulative punishment. (*Ohio v. Johnson, supra,* 467 U.S. at pp. 499–500.) In addition, the court strongly disagreed with Johnson's claim that continued prosecution of the greater offenses would violate the double jeopardy bar against a second prosecution following a conviction. (*Id.* at pp. 500–502.) The court stated, "Respondent's argument is apparently based on the assumption that trial proceedings, like amoebae, are capable of being infinitely subdivided, so that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded. We have never held that, and decline to hold it now." (*Id.* at p. 501.) Because Johnson had not yet been tried or exposed to a conviction on the murder and aggravated robbery charges, and the trial court's acceptance of guilty pleas on the lesser charges had none of the hallmarks of an implied acquittal, no interest protected by the double jeopardy clause was implicated by a continuing prosecution. (*Ohio v. Johnson,* at pp. 501–502.) "On the other hand, ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws." (*Ohio v. Johnson,* at p. 502.)

Defendant here did not try to manipulate the system by entering preemptive guilty pleas, and unlike the defendant in *Johnson* he *was* required to face trial twice on the One Strike allegation. However, a more recent Supreme Court decision suggests the overriding lesson is that double jeopardy does not bar retrial of sentencing facts when there is not an implied acquittal.

In *Sattazahn, supra,* 537 U.S. 101, 103–104, the jury convicted the defendant of first degree murder but could not reach a verdict at the penalty phase of trial. The trial judge discharged the jury as hung and sentenced the defendant to life imprisonment, as was required by Pennsylvania law in the absence of a unanimous verdict for death. (*Id.* at pp. 104–105.) The murder conviction was reversed on appeal, however, and when the case was remanded for a new trial the prosecution alleged an additional aggravating circumstance and again sought the death penalty. At the second trial, the jury convicted the defendant of first degree murder and imposed a death sentence. (*Id.* at p. 105.)

The United States Supreme Court concluded the double jeopardy clause did not prevent the state from seeking the death penalty at the second trial. (*Sattazahn, supra,* 537 U.S. at p. 105.) Although double jeopardy principles do apply to capital sentencing proceedings that "have the hallmarks of the trial on guilt or innocence" (*Bullington v. Missouri* (1981) 451 U.S. 430, 439

[68 L.Ed.2d 270, 101 S.Ct. 1852]), the court stressed in *Sattazahn* that "it is not the mere imposition of a life sentence that raises a double-jeopardy bar" (*Sattazahn*, at p. 107). Rather, what matters is whether the procedures governing the jury's verdict of life imprisonment signify that it *acquitted* the defendant of whatever was necessary to impose death. (*Id.* at pp. 106–107; *Bullington v. Missouri*, at p. 445; see also *Arizona v. Rumsey* (1984) 467 U.S. 203, 211 [81 L.Ed.2d 164, 104 S.Ct. 2305] [because jury's findings amounted to "an acquittal on the merits," they barred a retrial seeking the death penalty].) Accordingly, "the relevant inquiry for double-jeopardy purposes [i]s not whether the defendant received a life sentence the first time around, but rather whether a first life sentence was an 'acquittal' based on findings sufficient to establish legal entitlement to the life sentence . . . ." (*Sattazahn*, at p. 108.) The *Sattazahn* court noted that "whether there has been an 'acquittal' " is "the touchstone for double-jeopardy protection in capital-sentencing proceedings." (*Id.* at p. 109.)

■ *Sattazahn* teaches that double jeopardy principles do not bar retrial of an aggravated sentencing allegation if the first trial did not produce an express or implied acquittal on the allegation. (*Sattazahn, supra*, 537 U.S. at pp. 106–110.) Sattazahn was originally sentenced to life, not because a jury acquitted him at the penalty phase, but because a state statute called for this sentence if the jury hung on the question of death. (*Id.* at pp. 104–105.) *Sattazahn*'s reasoning guides the application of Fifth Amendment principles to other penalty allegations that must be tried to a jury and proven beyond a reasonable doubt.

*Sattazahn* is also instructive because a plurality of the high court went on to consider the double jeopardy question in light of the court's ruling in *Apprendi, supra*, 530 U.S. 466. With regard to the Sixth Amendment's jury-trial guarantee, the court had previously held that when an aggravating circumstance makes the defendant eligible for the death penalty it is " 'the functional equivalent of an element of a greater offense.' " (*Ring v. Arizona* (2002) 536 U.S. 584, 609 [153 L.Ed.2d 556, 122 S.Ct. 2428].) A plurality of the justices in *Sattazahn* found "no principled reason to distinguish, in this context, between what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes an 'offence' for purposes of the Fifth Amendment's Double Jeopardy Clause. [Citation.]" (*Sattazahn, supra*, 537 U.S. at p. 111.) Applying *Apprendi* and *Ring*, the court explained first degree murder is "properly understood to be a lesser included offense of 'first-degree murder plus aggravating circumstance(s).' [Citation.]" (*Sattazahn*, at p. 112.) The court reasoned that double jeopardy would have prohibited the state from retrying the greater offense, i.e., from seeking the death penalty, *if but only if* the first sentencing jury had unanimously concluded the state had failed to prove any aggravating circumstance, a conclusion that would have operated as an acquittal of the greater offense.

"But," the court observed, "that is not what happened." (*Ibid.*) Instead, because the jury deadlocked at the penalty phase and did not "acquit" the defendant of this greater offense, the high court concluded "there was no double-jeopardy bar to Pennsylvania's retrying [him] on both the lesser and the greater offense; his 'jeopardy' never terminated with respect to either. [Citations.]" (*Id.* at p. 113.)

We have rejected defendant's argument that the attachment of factual sentencing allegations to a substantive offense creates a new "greater offense." But even if we were to accept this proposition, defendant's argument would fail under *Sattazahn*. Defendant's first jury could not agree on the truth of the kidnapping allegations. Just as in *Sattazahn*, the mistrial entered on these sentencing allegations did not constitute an acquittal, and thus they could be retried without offending the double jeopardy clause.

■ The procedural circumstances here parallel those in *Sattazahn*. The jury convicted defendant of a substantive offense but expressly deadlocked on an allegation that would have increased his penalty for that offense. Even if *Apprendi* requires us to consider the One Strike allegation as the equivalent of a greater offense, conferring a jury trial right, the double jeopardy clause does not prohibit retrial simply because a judgment was entered on the lewd act offense alone. Because the jury announced it could not reach a verdict on the One Strike allegation, its verdict on the underlying offense cannot be construed as an acquittal under either the federal double jeopardy clause or the California Constitution. (See *Fields, supra*, 13 Cal.4th at pp. 302–303, 305.) Moreover, under federal constitutional law, the mistrial due to jury deadlock was not an event that terminated jeopardy on the allegation. (See *Sattazahn, supra*, 537 U.S. at p. 113; *Richardson v. United States, supra*, 468 U.S. at p. 325.) Accordingly, constitutional double jeopardy principles did not bar retrial of the One Strike allegation. (See *U.S. v. Williams* (5th Cir. 2006) 449 F.3d 635, 645–646 [when jury returned conviction on base offense but deadlocked on penalty factors, double jeopardy clause did not bar retrial of the penalty allegations]; *U.S. v. Bordeaux* (8th Cir. 1997) 121 F.3d 1187, 1191–1193 [verdict on lesser included offense did not bar retrial of greater offense on which jury had deadlocked].)

III. *Statutory Double Jeopardy Protection: Section 1023*

■ Although the double jeopardy clause of the Fifth Amendment permits retrial of the One Strike allegation at issue here, we have observed that "federal law sets the minimum standards of double jeopardy protection," and, "[u]nder California law, in some instances, an accused may be entitled to greater double jeopardy protection than that afforded under the federal Constitution. [Citations.]" (*Fields, supra*, 13 Cal.4th at p. 302.) Accordingly,

we consider whether defendant's second trial on the One Strike allegation violated California's *statutory* provision against double jeopardy.

■ Section 1023 states: "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading." "The statute implements the protections of the state constitutional prohibition against double jeopardy, and, more specifically, the doctrine of included offenses. [Citations.] Underlying this principle—that a conviction of a lesser included offense is a bar to a subsequent prosecution for the greater offense—is the notion that, once a conviction on the lesser offense has been obtained, ' "to [later] convict of the greater would be to convict twice of the lesser." ' [Citations.]" (*Fields, supra,* 13 Cal.4th at pp. 305–306.)

In *Fields,* the defendant was charged with several offenses after he caused a fatal collision while driving intoxicated. (*Fields, supra,* 13 Cal.4th at p. 296.) The jury deadlocked on the greater offense of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)) but convicted on the separately charged lesser included offense of vehicular manslaughter while intoxicated (§ 192, subd. (c)(3)). (*Fields,* at pp. 296–297.) Because of the jury's express deadlock, we concluded its conviction on the lesser included offense was not an implied acquittal of the greater offense. Thus, his retrial on the greater offense was not constitutionally prohibited. (*Id.* at pp. 298–305.) We nevertheless applied existing case law to conclude retrial was barred by statute.

■ Nearly 50 years before *Fields,* we interpreted section 1023 to mean that a conviction for a lesser included offense bars a later prosecution for the greater offense. (*People v. Greer* (1947) 30 Cal.2d 589, 597 [184 P.2d 512].) "Underlying *Greer*'s interpretation of section 1023 . . . was the concern that, if such were not the rule, 'section 1023 could be vitiated by the simple device of beginning with a prosecution of the lesser offense and proceeding up the scale.' (*People v. Greer, supra,* 30 Cal.2d at p. 597.)" (*Fields, supra,* 13 Cal.4th at p. 307.) We adhered to this interpretation in *Fields,* holding that section 1023 prohibits the retrial of a greater offense after a defendant's conviction of a lesser included offense even when there has been no express or implied acquittal of the greater offense. (*Fields,* at p. 307.) We observed that a contrary rule would result in "numerous and formidable practical difficulties," such as whether the second jury should be advised of the defendant's previous conviction and how to resolve potentially inconsistent verdicts on the lesser included offense. (*Id.* at p. 307 & fn. 5.)

Our decision in *Fields* was grounded in an established rule of trial procedure known as the "acquittal-first rule." (*Fields, supra*, 13 Cal.4th at p. 309.) In *Stone v. Superior Court, supra*, 31 Cal.3d at page 519, we held a defendant's constitutional rights require that the jury be permitted to render a partial verdict of acquittal on a greater offense *when they are deadlocked only as to a lesser included offense*. To aid trial courts in fulfilling this constitutional obligation, we suggested the court provide separate verdict forms for each offense but stressed, "[t]he jury must be cautioned, of course, that it should first decide whether the defendant is guilty of the greater offense before considering the lesser offense . . . ." (*Ibid.*) We clarified this rule in *People v. Kurtzman* (1988) 46 Cal.3d 322 [250 Cal.Rptr. 244, 758 P.2d 572], a case involving jury deadlock on the *greater* offense but not the lesser. We explained that in all trials of included offenses, "the jury must acquit of the greater offense before returning a verdict on the lesser included offense," although it can consider or discuss the offenses in any order it chooses. (*Id.* at p. 330.) The acquittal-first rule protects a defendant from retrial when the jury agrees that the greater offense was not proven but cannot agree on a lesser included offense. Without the rule, a general declaration of mistrial would disguise the fact that the jury agreed the defendant was not guilty of the greater offense, making the defendant subject to retrial on both the greater and lesser offenses.

The problem in *Fields* arose because the defendant's jury was not advised of its obligation to return a verdict on the greater offense first, before rendering a verdict on the lesser included offense. We explained that a jury's verdict on a lesser included offense only is "incomplete" and constitutes an "irregular verdict" that is " 'mistaken in the law.' " (*Fields, supra*, 13 Cal.4th at pp. 310–311.) If the jury renders only a verdict of guilty on the lesser offense, we stated that the trial court should decline to receive the verdict and should direct the jury to reconsider its lone verdict in light of the acquittal-first rule of *People v. Kurtzman*. (*Fields*, at p. 310.) If the court fails to do so, and instead records the partial verdict and discharges the jury, we held section 1023 requires the consequences of this " 'mistake in the law' " to be borne by the People, not the defendant, such that the conviction of the lesser offense will bar the People from retrying the greater, notwithstanding the jury's deadlock on that charge. (*Fields*, at p. 311.) When the jury is instructed on the acquittal-first rule and hangs on the more serious offense, the prosecution is put to a choice: It may either move for a mistrial and set the entire matter for a retrial (§§ 1140, 1141), or, if it wishes to accept a verdict on the lesser charge and forgo a chance to convict on the greater, the prosecution may ask the court to dismiss the greater charge in the interest of justice (§ 1385). (*Fields*, at p. 311.) As we recognized in *Fields*, the whole point of the

*Stone/Kurtzman* rule is to provide a procedure whereby the jury's intent is clear, and legitimate interests of both the defendant and the People are honored.

Defendant seeks to divorce *Fields* from this intricate context and extend its holding to the retrial of penalty allegations. Starting from the premise that *Apprendi, supra,* 530 U.S. at page 490, requires a penalty allegation to be treated as the functional equivalent of a greater offense, defendant argues his conviction for the lewd act offense alone is essentially the same as a conviction for a lesser included offense. Because he stood convicted of the lewd act offense at the close of the first trial, defendant argues retrial of the "greater offense" on which the first jury deadlocked, i.e., the One Strike allegation, was barred by section 1023 and our holding in *Fields.* Under defendant's reasoning, any time a jury convicts the accused of an offense but deadlocks on a related sentencing allegation, either the entire case would have to be retried or the deadlock would have to be given the same effect as an acquittal, barring retrial of the allegation. Neither *Apprendi* nor *Fields* requires this result.

 As discussed, *ante,* at pages 101 to 103, the penalty provisions set forth in our state's Penal Code differ in significant ways from both greater and lesser included offenses and greater and lesser degrees of the same offense. "[A] penalty provision prescribes an added penalty to be imposed when the offense is committed under specified circumstances." (*Bright, supra,* 12 Cal.4th at p. 661.) Under California law, a sentencing enhancement or penalty allegation is not a complete offense in itself. It is "separate from the underlying offense and does not set forth elements of the offense or a greater degree of the offense charged. [Citations.]" (*Ibid.*) Conceptually, a penalty provision is an appendage that attaches to an offense and, if proven, prescribes additional punishment for the crime. (*People v. Wolcott* (1983) 34 Cal.3d 92, 100–101 [192 Cal.Rptr. 748, 665 P.2d 520].)

Another important difference between a greater offense and a penalty provision, for our purposes, is that "[t]he jury does not decide the truth of the penalty allegation until it first has reached a verdict on the substantive offense charged. [Citation.]" (*Bright, supra,* 12 Cal.4th at p. 661.) Here, defendant's attempt to extend *Fields* to penalty allegations encounters a significant practical obstacle. It is only logical for the jury to decide first whether a defendant committed the substantive offense before considering whether the appended sentencing facts are true. If the substantive offense is not proven, there is no crime and thus no sentence to be aggravated. Our interpretation of section 1023 in *Fields* was grounded on the acquittal-first rule of *Stone* and *Kurtzman* (see *Fields, supra,* 13 Cal.4th at pp. 308–311), but no such rule governs the order of verdicts on sentencing allegations. We have never held

that a jury's conviction of an offense alone, without an accompanying acquittal on alleged penalty factors, constitutes an irregular verdict or a mistake of law. Indeed, the whole point of alleging the enhancing factors separately, and requiring a separate jury determination under *Apprendi*, is that they function to *increase* the punishment for the underlying crime. If the jury determines the enhancing allegations are not proven, that separate determination stands, but it does not undermine the jury's conviction on the substantive offense.

■■■ For these reasons, we have previously rejected the argument that a conviction on an underlying offense is enough in itself to bar retrial of attached sentencing allegations. As noted in *Bright, supra*, 12 Cal.4th at pages 661–662, "a defendant's conviction of the underlying substantive offense does not (on double jeopardy grounds) bar further proceedings, such as retrial, on a penalty allegation. [Citation.] Thus, the circumstance that the jury has returned a verdict on the underlying offense, but is unable to make a finding on the penalty allegation, does not constitute an 'acquittal' of (or otherwise bar retrial of) the penalty allegation on the ground of double jeopardy. [Citations.]" The question now is whether *Apprendi* requires us to overrule this holding by treating penalty allegations as substantive elements of an offense for purposes of section 1023, the *state statute* governing retrial of included offenses. We conclude it does not.

*Apprendi* held that every finding that exposes the defendant to punishment, or increases the punishment possible for a crime, must be submitted to a jury and proved beyond a reasonable doubt. (*Apprendi, supra*, 530 U.S. at p. 490; see *Oregon v. Ice* (2009) 555 U.S. ___, ___–___ [172 L.Ed.2d 517, 129 S.Ct. 711, 716–717] [listing sentencing facts to which *Apprendi* has been applied].) The high court's holding stemmed from the Fifth Amendment right to due process and the Sixth Amendment right to a jury trial. (*People v. Izaguirre* (2007) 42 Cal.4th 126, 131 [64 Cal.Rptr.3d 148, 164 P.3d 578] (*Izaguirre*); see *Apprendi*, at p. 476.) *Apprendi* thus requires that any sentencing provision that increases the penalty for a crime beyond the statutory maximum be treated as the "functional equivalent" of an element of a greater offense for purposes of a defendant's federal constitutional rights under the Fifth and Sixth Amendments. (*Apprendi*, at p. 494 & fn. 19; *Sengpadychith, supra*, 26 Cal.4th at p. 326.) This holding parallels the California sentencing scheme. Both substantive offenses and sentencing allegations require that certain facts be established before the jury can conclude the allegations have been proven. In addition, although *Apprendi* itself was "not grounded on principles of federal double jeopardy protection" (*Izaguirre*, at p. 131), we have extended its reasoning to bar retrial of a penalty allegation after the equivalent of an acquittal under the federal double jeopardy clause. (*Seel, supra*, 34 Cal.4th at pp. 548–549.)

However, to say that a penalty provision must sometimes[11] be treated as the "functional equivalent" of an element for claims arising under the federal Constitution does not mean such provisions *are* now elements for all purposes under California law. We rejected this notion in *Izaguirre, supra,* 42 Cal.4th at pages 133–134. (See also *People v. Sloan* (2007) 42 Cal.4th 110, 123 [64 Cal.Rptr.3d 137, 164 P.3d 568].)

*Izaguirre* addressed the application of *Apprendi* to California's multiple conviction rule. "In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. . . . Section 954 generally permits multiple conviction. Section 654 is its counterpart concerning punishment. It prohibits multiple punishment for the same 'act or omission.' When section 954 permits multiple conviction, but section 654 prohibits multiple punishment, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited. [Citations.]" (*People v. Reed* (2006) 38 Cal.4th 1224, 1226–1227 [45 Cal.Rptr.3d 353, 137 P.3d 184].) A judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses. (*Id.* at p. 1227; *People v. Montoya* (2004) 33 Cal.4th 1031, 1034 [16 Cal.Rptr.3d 902, 94 P.3d 1098].) The defendant in *Izaguirre* sought to graft *Apprendi* onto these state law rules, arguing his convictions for two firearm enhancements should have been stricken because they were necessarily included in his conviction for the greater offense of first degree murder with a driveby shooting special circumstance. (*Izaguirre, supra,* 42 Cal.4th at pp. 129–130, 132.) He argued this result followed from *Apprendi*'s directive that a crime and its attached sentence enhancement be treated as the functional equivalent of a single greater crime. (*Izaguirre,* at p. 130; see *Seel, supra,* 34 Cal.4th at p. 539, fn. 2.)

We disagreed and found *Apprendi*'s holding inapposite to the question of whether enhancements must be considered in defining necessarily included offenses for purposes of the multiple conviction rule. (*Izaguirre, supra,* 42 Cal.4th at p. 133.) "To the extent the firearm-related enhancements in question stood to increase *punishment, Apprendi*'s holding, grounded on the Fifth Amendment right to due process and Sixth Amendment right to jury trial, requires only that they be tried to a jury and found true beyond a reasonable doubt, which they were." (*Izaguirre,* at p. 133.) We also observed that the federal double jeopardy concerns addressed in *Seel, supra,* 34 Cal.4th 535, were not at issue because the defendant's claim concerned multiple convictions imposed in a unitary trial, not successive prosecutions. (*Izaguirre,*

---

[11] As we made clear in *Sengpadychith*, the constitutional requirements of *Apprendi* apply only when a penalty or enhancement has the potential to increase a defendant's punishment beyond the statutory maximum. (*Sengpadychith, supra,* 26 Cal.4th at pp. 320, 327.) When such an increase is not possible, *Apprendi* does not apply.

at pp. 133–134.) Finally, we rejected the defendant's argument that "conduct enhancements are the functional equivalent of completed offenses or convictions for purposes of the multiple conviction rule," noting it had no support in case law. (*Id.* at p. 134.) "Conduct enhancements cannot be imposed standing alone as additional punishment. By definition, an enhancement is 'an additional term of imprisonment added to the base term.' (Cal. Rules of Court, rule 4.405(3); see *People v. Jefferson* (1999) 21 Cal.4th 86, 101 [86 Cal.Rptr.2d 893, 980 P.2d 441].) For that reason alone, an enhancement cannot be equated with an offense. (See *People v. Chiu* (2003) 113 Cal.App.4th 1260, 1265 [7 Cal.Rptr.3d 193].)" (*Izaguirre*, at p. 134.) Thus, reasoning that "*enhancements are not legal elements of the offenses to which they attach*," we concluded they should not be considered in defining necessarily included offenses under the multiple conviction rule. (*Id.* at p. 128, italics added.)

Defendant here also seeks to expand *Apprendi* to a state statute relating to an area entirely under the aegis of state law. However, the United States Supreme Court has made it clear that *Apprendi*, and cases following it, did not alter state substantive law. In *Schriro v. Summerlin* (2004) 542 U.S. 348 [159 L.Ed.2d 442, 124 S.Ct. 2519], the court rejected an argument that *Ring v. Arizona, supra,* 536 U.S. 584, created a substantive change in the law because *Apprendi* converted aggravating factors into the functional equivalent of elements of greater offenses. The high court explained that *Apprendi* and *Ring* did not create new substantive elements of offenses; rather, they simply held that when findings *function* like elements of greater offenses by increasing punishment, they must be made by a jury under the reasonable doubt standard. (See *Schriro v. Summerlin*, at p. 354.) More recently, the court has observed that the sovereign authority of states in maintaining their own criminal justice systems counsels against extending *Apprendi* beyond its specific context. (*Oregon v. Ice, supra,* 555 U.S. at pp. ___–___ [129 S.Ct. at pp. 718–719].) As Justice Ginsburg noted, members of the high court "have warned against 'wooden, unyielding insistence on expanding the *Apprendi* doctrine far beyond its necessary boundaries.' [Citation.]" (*Id.* at p. ___ [129 S.Ct. at p. 719].)

Our holding in *Izaguirre* illustrates that sentencing enhancements or other penalty provisions need not be treated as *actual* elements of offenses for all conceivable *state law* purposes, but only where the defendant's claim implicates a *federal* constitutional right under the Fifth or Sixth Amendment. In California, "sentence enhancements are not 'equivalent' to, nor do they 'function' as, substantive offenses." (*People v. Wims* (1995) 10 Cal.4th 293, 307 [41 Cal.Rptr.2d 241, 895 P.2d 77], overruled on another ground in *Sengpadychith, supra,* 26 Cal.4th at p. 326.) *Apprendi* does not require or enable us to rewrite the Penal Code to convert penalty provisions such as the one at issue here into elements of offenses. "[I]t is the function of the

legislative branch to define crimes and prescribe punishments . . . ." (*In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921].)

Under California law, the One Strike allegation on which defendant's first jury deadlocked was not a greater offense that incorporated the underlying lewd act crime as a lesser included offense. It was simply a penalty allegation. While *Fields* does not apply, *Bright* does. *Bright* holds that a conviction on an underlying substantive offense does not bar retrial of a penalty allegation on which the first jury deadlocked. (*Bright, supra,* 12 Cal.4th at p. 661.) Under *Apprendi,* the One Strike allegation had to be tried to a jury, and under *Seel* an acquittal on the allegation would have barred retrial. However, these federal constitutional requirements do not persuade us to impose even more sweeping double jeopardy protections under California statutory law. Retrial of the One Strike allegation did not violate section 1023.

## IV. *Scope of Retrial*

Having concluded the retrial of a penalty allegation is permitted, we turn to the proper scope of such a retrial. Defendant argues it was structural error to retry the One Strike kidnapping allegation "in isolation" because, even if retrial did not violate double jeopardy, the law requires all elements of a crime to be tried together. Construing the One Strike allegation as an element of a greater offense, defendant contends retrial had to encompass both the kidnapping allegation and the underlying lewd act offense to which it was attached.

The premise of defendant's argument fails. As we have explained, the fact that a penalty allegation must be *treated like* an element for certain federal constitutional purposes does not convert the allegation into an *actual* element of a substantive offense. A sentencing enhancement or other penalty provision is not an element of an offense under California law. (*People v. Wims, supra,* 10 Cal.4th at pp. 304, 307; see *People v. Wolcott, supra,* 34 Cal.3d at p. 101.)

A criminal defendant has a right under both the United States and the California Constitutions to have every element of an offense tried to a jury and proved beyond a reasonable doubt. (*United States v. Gaudin* (1995) 515 U.S. 506, 511 [132 L.Ed.2d 444, 115 S.Ct. 2310]; *People v. Flood* (1998) 18 Cal.4th 470, 479–480 [76 Cal.Rptr.2d 180, 957 P.2d 869].) However, we have not interpreted this right to mean that the same jury that finds a defendant guilty of an offense must always decide the truth of an attached penalty allegation. On the contrary, "prior decisions have held that a trial court may receive a guilty verdict from a jury that is unable to agree on a penalty provision, declare a mistrial on the penalty provision alone, and

empanel another jury to consider the issue of penalty. [Citations.]" (*People v. Posey* (2004) 32 Cal.4th 193, 216 [8 Cal.Rptr.3d 551, 82 P.3d 755].) An example of this procedure is codified in section 190.4, subdivision (a), which provides that, if the jury is unable to reach a verdict on special circumstance allegations attached to a first degree murder charge, "the court shall dismiss the jury and shall order a new jury impaneled to try the issues, but the issue of guilt shall not be tried by such jury . . . ." Thus, in the death penalty context, which arguably represents the most severe increase in punishment possible, the Legislature *mandates* the retrial of penalty factors apart from their underlying offense. (§ 190.4, subd. (a); *People v. Thompson* (1990) 50 Cal.3d 134, 176–177 [266 Cal.Rptr. 309, 785 P.2d 857].)

Several cases have approved of the retrial of sentencing allegations after a defendant has been convicted of the offense to which they were attached. In *People v. Saunders* (1993) 5 Cal.4th 580 [20 Cal.Rptr.2d 638, 853 P.2d 1093], we held double jeopardy principles did not bar a second jury from deciding the truth of prior conviction allegations after the defendant was convicted of the underlying offense. Although the defendant asserted we had recognized a defendant's " ' " 'valued right to have his trial completed by a particular tribunal' " ' " (*id.* at p. 595, quoting *Stone v. Superior Court, supra,* 31 Cal.3d at p. 516, fn. 7), we observed, "nothing in our opinion in *Stone* suggests that, in a bifurcated trial, the double jeopardy clause guarantees the defendant the right to have the truth of prior conviction allegations determined by the *same* jury that considers the current offenses." (*People v. Saunders,* at p. 595, italics added.)[12] And in *Bright, supra,* 12 Cal.4th at pages 660–661, 671, we held that a premeditation allegation is not an element of an offense, and therefore double jeopardy principles did not bar retrial of the allegation. In so doing, we affirmed the Court of Appeal's decision that "retrial *on the limited question presented by the penalty allegation*" is permissible. (*Id.* at p. 660, italics added; see *id.* at p. 671.) More recently, in *People v. Posey, supra,* 32 Cal.4th at page 216, we held that retrial limited to the issue of venue is permissible after a jury has found the defendant guilty but deadlocked on venue, because venue is not an element of an offense.

Courts of Appeal have reached the same conclusion with respect to sentencing enhancements. In *People v. Schulz* (1992) 5 Cal.App.4th 563 [7

---

[12] In considering the double jeopardy consequences of a mistrial granted due to prosecutorial misconduct, we have observed that "a criminal defendant who is *in the midst of trial* has an interest, stemming from the double jeopardy clause, in having his or her case resolved by the jury that was initially sworn to hear the case—and in potentially obtaining an acquittal from that jury. [Citation.]" (*People v. Batts* (2003) 30 Cal.4th 660, 679 [134 Cal.Rptr.2d 67, 68 P.3d 357], italics added.) The situation here is quite different, of course, because the defendant's trial is over, and it did not result in an acquittal. Our statement in *Batts* concerned a different issue and did not establish an absolute right for all offenses and allegations brought against a defendant to be decided by a single jury.

Cal.Rptr.2d 269], after a jury convicted the defendant of attempted murder but deadlocked on an attached enhancement for inflicting great bodily injury, the defendant argued the enhancement could not be retried in isolation from the underlying attempted murder offense. Raising the same argument made here, the defendant in *Schulz* asserted, "when the jury hung on the enhancement, the prosecution should have been given the choice of either accepting the attempted murder verdict and requesting dismissal of the enhancement, or requesting a mistrial as to the attempted murder count as well and retrying both the attempted murder charge and its enhancement." (*Id.* at p. 568.) The Court of Appeal rejected this assertion. Noting that section 1160 expressly permits retrial of charged offenses on which the jury cannot reach a verdict, the court observed that, although no similar statute specifically permits the retrial of enhancements, "no legal or practical barrier" prevents the retrial of an enhancement when, as in the case of a jury deadlock, jeopardy is not a bar. (*People v. Schulz,* at p. 569.) Similarly, the court in *People v. Guillen* (1994) 25 Cal.App.4th 756, 762 [31 Cal.Rptr.2d 653], relied on *Schulz* to permit retrial of a weight enhancement on which the jury had deadlocked following the defendant's conviction of an underlying drug offense.

In other circumstances, we have disapproved of "piecemeal jury litigation," in which penalty issues are reserved for a second trial. (*People v. Najera* (1972) 8 Cal.3d 504, 511–512 [105 Cal.Rptr. 345, 503 P.2d 1353].) However, the facts in *Najera* were quite different. There, a jury convicted the defendant of robbery and found he was armed with a revolver. (*Id.* at p. 506.) A question arose on appeal as to whether he could be punished for having used the gun in the offense, pursuant to section 12022.5. (*People v. Najera,* at pp. 506, 508–509.)[13] Because the prosecution failed to request an instruction under section 12022.5 and "took no steps whatever at trial to secure a verdict or judgment stating the applicability of section 12022.5" (*People v. Najera,* at p. 509), we determined the judgment had to be modified to specify that the enhancement could not be applied. (*Id.* at p. 517.)

*Najera* was a case in which the prosecution failed to allege a potentially relevant enhancement and then tried to invoke the enhancement for the first time on the defendant's appeal from the judgment. (*People v. Najera, supra,* 8 Cal.3d at pp. 509–511; see also *People v. Salas* (2001) 89 Cal.App.4th 1275, 1282 [108 Cal.Rptr.2d 137].) Although Najera's conviction was being affirmed on appeal, the People urged us to remand the case for a further jury

---

[13] The Legislature has distinguished between being *armed* with a firearm, i.e., having the weapon available for use, and actually *using* a firearm in the commission of a felony. (*People v. Bland* (1995) 10 Cal.4th 991, 996–998 [43 Cal.Rptr.2d 77, 898 P.2d 391]; *People v. Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024].) Firearm use is generally subject to more severe penalties. (Compare § 12022.5 [extending sentence three to 10 years for firearm use] with § 12022 [extending sentence one year for being armed with a firearm, with additional punishment provided for certain firearms and felonies].)

trial to determine whether a use enhancement could also be imposed. (*People v. Najera*, at p. 511.) We concluded fundamental fairness prohibited this second proceeding, noting, "defendant should not have to undergo a second 'trial' on the issue of penalty, especially since the People could have obviated such a procedure by timely measures during the first trial." (*Id.* at pp. 511–512.) Thus, where the judgment was being affirmed and *there was no legal basis for a remand*, we determined it would be unfair to subject the defendant to a second trial simply to give the People an opportunity to seek an enhancement they had not previously alleged. (*Id.* at pp. 510–512.) Our statements in *Najera* have no bearing on the situation here, in which the penalty allegation was properly presented to defendant's first jury and retrial was necessary because the jury could not reach a unanimous verdict on the issue. (See *People v. Schulz, supra*, 5 Cal.App.4th at p. 570 [*Najera*'s policy considerations do not apply when retrial is required by a hung jury]; cf. *Sattazahn, supra*, 537 U.S. at pp. 105, 109–110 [state's allegation of a second aggravating circumstance on retrial, which made defendant eligible for death penalty, was permissible because first jury hung at penalty phase].)[14]

The proper scope of sentencing allegation retrial has also arisen when resentencing has been required as a result of *Blakely v. Washington* (2004) 542 U.S. 296, 303 [159 L.Ed.2d 403, 124 S.Ct. 2531], which held that any facts used to impose an aggravated sentence must be found by the jury or admitted by the defendant. For example, after remand from the United States Supreme Court, the Arizona Supreme Court rejected a claim that resentencing on aggravating circumstances violates double jeopardy because it deprives a defendant of a right to have trial completed by a particular tribunal. (*State v. Ring* (2003) 204 Ariz. 534, 550–551 [65 P.3d 915, 931–932].) Arizona's high court observed that, while completing trial before the same judge or jury "is ideal, a defendant holds no absolute right to such an arrangement."

---

[14] A related penalty allegation was added in defendant's second trial. In addition to the section 667.61, subdivision (e)(1) allegation presented to the first jury, the People amended the information to add a second kidnapping allegation under section 667.61, subdivision (d)(2), which carries a harsher sentence of 25 years to life imprisonment. (See § 1009; *People v. Flowers* (1971) 14 Cal.App.3d 1017, 1020–1021 [92 Cal.Rptr. 647].) The People sought the amendment because the first jury expressed confusion about the different levels of proof required for the kidnapping allegation as opposed to the substantive kidnapping offense. Whereas the offense requires proof that movement of the victim substantially increased the risk of harm (§ 207, subd. (b)), a section 667.61, subdivision (e)(1) allegation does not. The People's addition of an allegation under section 667.61, subdivision (d)(2) aligned the elements required for the substantive kidnapping offense and the penalty allegation because, in addition to the subdivision (e)(1) requirements, subdivision (d)(2) requires proof of a substantial increase in the risk of harm. Defendant did not object to this amendment in the trial court, and he has raised no legal argument on appeal challenging the addition of the second kidnapping allegation. Accordingly, any claim of error has been waived. (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1056 [40 Cal.Rptr.3d 768]; *People v. Collins* (1963) 217 Cal.App.2d 310, 313 [31 Cal.Rptr. 587].)

(*Id.*, 65 P.3d at p. 932.) Similarly, the Oregon Supreme Court reversed a judgment due to *Blakely* error but rejected a claim that double jeopardy barred retrial of the sentencing enhancement. It concluded the retrial was "not a second prosecution," but rather a "sentencing proceeding on remand—a continuation of a single prosecution." (*State v. Sawatzky* (2005) 339 Or. 689, 696–697 [125 P.3d 722, 726]; see also *Hankerson v. State* (Minn. 2006) 723 N.W.2d 232, 241, fn. 5.)

Defendant has not identified, nor have we found, a single decision holding that aggravating factors must be retried together with all the elements of the underlying offenses to which they attach. If *Apprendi* truly required such a dramatic change in resentencing proceedings, one would expect to find case law reaching this conclusion, as well as clear guidance from the United States Supreme Court about how the change should be implemented. There is none, and we decline to create it.

Besides this lack of precedential support, defendant's view that a penalty allegation cannot be retried apart from its underlying offense would create significant practical problems. The most fundamental of these concerns the effect of the conviction rendered at the first trial. If a jury convicted on a substantive offense but hung on an attached penalty allegation, and if retrial were ordered on both the offense and the allegation, should the second jury be told that the defendant has been convicted of the offense?[15] If not, what would become of the first conviction should the second jury reach a different result? Giving the first conviction no effect in the second proceeding would fail to accord proper respect and finality to the initial unanimous verdict. These problems are compounded when multiple penalty allegations are involved. A single offense may have several penalty allegations or enhancements attached. Under defendant's view, if the jury returned a unanimous verdict of guilty on an offense and unanimous true findings on every penalty allegation except one, the deadlock on this single allegation would require retrial of the underlying offense and *all* other allegations on which the jury had returned verdicts. Such a result would be both inordinately wasteful and unfair to the People.

## V. *Conclusion*

For these reasons, we conclude that retrial of a penalty allegation on which the jury has deadlocked does not violate federal or state double jeopardy principles, and retrial may be limited to the deadlocked allegation alone. *Apprendi* gives criminal defendants the right to a jury trial for all

---

[15] Cf. *Fields, supra,* 13 Cal.4th at page 307, footnote 5 (noting the potential for juror confusion and speculation if they are told the defendant was convicted in an earlier trial of a lesser included offense).

allegations that have the potential to increase punishment, but *Apprendi* does not require us to give a mistrial the same effect as an acquittal in the double jeopardy context, nor does it alter our state law with respect to the permissible scope of retrial.

## DISPOSITION

The judgment of the Court of Appeal is affirmed. The case is remanded to the trial court for further proceedings in accordance with the Court of Appeal's decision.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**MORENO, J.,** Concurring.—I concur in the majority opinion. The possible effect of the majority's holding, however, is a cause for some concern. Rather than being required to find a defendant guilty beyond a reasonable doubt of the underlying offense, the jury that tries a penalty enhancement separately will presumably be told that a defendant has been found guilty of that offense, otherwise it would not be able to convict on the enhancement. In this circumstance, there is the potential that the presumption of innocence for the penalty enhancement, in practical terms, will be eroded, and that therefore a defendant being retried on the enhancement alone will be in a more disadvantageous position than he was in the original trial when the offense and the enhancement were tried together. Whether current standard jury instructions are adequate to safeguard the presumption of innocence in this situation, or a new instruction is needed, remains to be determined.

On August 26, 2009, the opinion was modified to read as printed above.