Filed 6/27/13  P. v. Meyers CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B231777 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA066727) |
| v. | |
| WILLIAM MEYERS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ronald S. Coen, Judge.  Reversed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## SUMMARY

Defendant William Meyers appeals from a judgment entered after a jury convicted him of one count of residential burglary. (Pen. Code, § 459.)[1]

On appeal, Meyers contends, inter alia, that the trial court committed reversible error in admitting evidence of uncharged offenses and gave a limiting instruction on the uncharged offenses that was misleading and confusing.[2] We agree and reverse.

## FACTS AND PROCEEDINGS BELOW

### I. Prosecution Evidence

Jayne Fleming, Meyers's mother, testified that on Friday, January 8, 2010, she left her house at about 7 a.m. to go to work and returned home at around 5 p.m. to discover that the window in her bedroom was missing and had been taken out and was on the ground outside the house. A digital camera that she had "just bought" was missing. Also missing was a case of compact discs.

Fleming testified that Meyers lived with her nine years ago for about eighteen years. Fleming did not remember the last time Meyers stayed over at her house (when no longer living there) but did say that there had not been very many stays. In January 2010 generally and on January 8, 2010 in particular, Meyers did not have permission to go into her house and she had communicated this to him. When asked why Meyers did not have permission, Fleming responded "Because he has broken in my house many times."

On cross-examination, Fleming testified that Meyers believed he still lived at her house. Fleming stated she was aware that Meyers used her address for his mail because his "mail was coming there" and Meyers still received mail at her address "[o]nce in a

---

[1] Further statutory references are to the Penal Code.

[2] On appeal, Meyers makes four arguments. Because we agree with Meyers's contentions as to the uncharged offense evidence and jury instruction, we find it unnecessary to address his two remaining claims: that the trial court abused its discretion when it denied his request for a one-day continuance to produce two witnesses who could testify that he used Fleming's address for his mail related to his general relief card, and that, in the alternative, the cumulative effect of the preceding three errors amounted to prejudicial error.

great while." Fleming would send it back to the post office and did not know from whom it was sent. Fleming denied that Meyers would on occasion come to the house and pick up his mail from her, stating that she did not remember him picking up mail from her. She conceded it was possible that she had turned over mail to Meyers, but had no recollection of doing so. While Fleming was aware that Meyers had been applying for general relief, she did not recall him saying that he expected the card to come in the mail. Fleming stated that Meyers was allowed to come to her house to visit "as long as I was home." Fleming did not recall the last time Meyers stayed at her house, but thought it was probably a "couple of years" and stated that Meyers no longer had a bedroom at her house. Fleming also stated the missing compact discs were in a case and Meyers did not have any compact discs in her case or at her house during the relevant time.

Los Angeles Police Officer Peter York testified that he went to Fleming's house the next day, Saturday January 9, 2010, to investigate a burglary. Officer York found that a sliding glass window had been removed from the frame and placed on the ground outside the house. Officer York was told by Fleming that her camera and 20 compact discs were taken. Other compact discs were still in the house.

Officer York testified that "[Fleming] told us [Meyers] used to live there a long time prior. I don't recall the specific time or dates. She said that he was not allowed to be there anymore, and that he had burglarized her house in the past and there were police reports to verify it." The court ordered that "the part of Officer York's testimony that, per Ms. Fleming, telling the officer that defendant has burglarized house in the past is stricken. The rest of the statement does remain."

Los Angeles Police Detective John Macchiarella testified that on January 20, 2010, twelve days after the burglary, he was present as Detective John Goslin interviewed Meyers at the Men's Central Jail in downtown Los Angeles. Detective Goslin was the investigating officer on the case.[3] Meyers told Goslin and Macchiarella

---

[3] As discussed in a sidebar, Detective Goslin was out on medical leave and not available to testify.

3

that he had gone to his mother's house "to retrieve some of his property, and while he was there he borrowed his mother's camera." Initially, Meyers said he had "taken" the camera, but then stated that he had "borrowed" it. Meyers mentioned that he went to the house to get his general relief card, but the detective did not recall if he mentioned the compact discs. During the interview, Meyers provided the police with a written statement.

## II. Defense Evidence

Defendant recalled Officer Macchiarella who reiterated portions of his prior testimony. Detective Macchiarella also read the written statement Meyers had provided to the police during his interview:

> Mom, I'm sorry for missing grandma's funeral and am sorry for everything. I went to get my G.R. card from your house, and I have your camera. Please don't press charges on me. The court is trying to give me a drug program, and if I get an add charge I'll have to go back to prison. I go to drug court this Friday. I don't know if you want to talk to me or not. But I'll call you and let you know what's going on, and I promise to give the camera back. I did not sell it, was just using it. I love you, mom.

## III. Conviction and Sentence

The jury convicted Meyers on one count of burglary in the first degree. The jury also found to be true the special allegations that Meyers had served four prior prison terms. (§ 667.5, subd. (b).) Meyers was sentenced to an aggregate term of 10 years in state prison, consisting of an upper term of six years, plus one year for each of the four prior prison term enhancements.

## DISCUSSION

On appeal, Meyers argues, inter alia, that the trial court abused its discretion when it admitted testimony that Meyers had broken into his mother's house on prior occasions,

4

and the court's jury instruction limiting the use of evidence of the prior break-ins was confusing and misleading.  We agree.

## I.  Evidence of Uncharged Offenses

We review the trial court's admission of uncharged misconduct evidence under Evidence Code sections 1101 and 352 for abuse of discretion.  (*People v. Kipp* (1998) 18 Cal.4th 349, 369, 373.)  Under Evidence Code section 1101, evidence of other offenses or misconduct is inadmissible to prove criminal propensity, but may be admitted if relevant to prove a material fact such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  (Evid. Code, § 1101, subds. (a) & (b); *People v. Kelly* (2007) 42 Cal.4th 763, 783.)  To be admissible, "such evidence 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352.  [Citations.]'  [Citation.]"  Because evidence of uncharged offenses is highly prejudicial, it must have substantial probative value, and the trial court must carefully analyze the evidence under Evidence Code section 352 to determine if its probative value outweighs its inherent prejudicial effects.  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.)  Under Evidence Code section 352, the trial court "in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  The court's ruling on the admission or exclusion of evidence under Evidence Code section 352 "'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.  [Citations.]'  (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)'"  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

On appeal, Meyers contends that testimony of past "break-ins" was not relevant to the narrow issue framed by the trial court of whether Meyers knew that his mother did not consent to his entering the house when she was not home, was cumulative of Fleming's testimony that she had told Meyers not to enter the house when she was not home, and Meyers did not present a consent-based defense to the burglary charge.

Here, in its opening statement, the prosecution stated that "William Meyers used to live at that house. William Meyers had previously taken things from his mother. William Meyers- - ", at which point defense counsel objected to the statement as "misstat[ing] the evidence." The court responded "There is no evidence, counsel. This is opening statement. Proceed."

The first witness, Officer York, was asked on cross-examination by defense counsel, "Did Ms. Fleming tell [you that] Mr. Meyers lived there?" Officer York responded, "She told us he used to live there a long time prior. I don't recall the specific time or dates. She said that he was not allowed to be there anymore, and that he had burglarized her house in the past and there were police reports to verify it." Defense counsel objected, moving to strike. A side bar followed, during which defense counsel stated he had not been provided with discovery on prior incidences and the court responded:

> THE COURT: Hold on a second, counsel.
>
> There is no violation of discovery statute. You were given everything. You asked a question. You asked a question that could have been objected to by hearsay. The People chose not to.
>
> You got the answer that you asked. Let me finish, sir. Don't interrupt me.
>
> [DEFENSE COUNSEL]: Well, let me move to strike that.
>
> THE COURT: He didn't state the grounds for that the defendant burglarized house in the past. What remains is the defendant used to live in the residence a long time prior and is not allowed in the residence now. That's the answer to your question.

*   *   *

THE COURT: . . . Now, I'm willing to strike the part about burglaries in the past. The answer to your question do you want me to do that.

* * *

THE COURT: I'm willing to strike the part of the answer saying that the victim, to this officer, that defendant burglarized the residence in the past.

Do you want me to do that? I'm doing it just through this officer. Do you understand that?

[DEFENSE COUNSEL]: Yes, I understand.

The court then told the jury "All right. Ladies and gentlemen, the part of Officer York's testimony that, per Ms. Fleming, telling the officer that defendant has burglarized house in the past is stricken. The rest of the statement does remain."

The court's admonition appears to have left unstricken the portion of Officer York's testimony recounting Fleming's claim that "there were police reports to verify" the prior burglaries. Although the word "burglaries" was stricken, the police reports regarding these burglaries remained for the jury to consider.

Later, in proceedings outside the presence of the jury before Fleming's testimony, defense counsel objected to any introduction of evidence of prior bad acts and the prosecution stated it was seeking to offer the evidence for intent and "to explain why the victim told defendant not to be at her house anymore" and expected the evidence to show that "there had been previous thefts, . . . that the victim believed to have been done by the defendant against her. And I did not intend to get into specifics about certain times or certain dates." The court stated "hearing what I have heard, and engaging in the balancing process as I speak, what I'm going to do is allow the People to present this evidence." Defense counsel reiterated that "a specific instance of bad conduct is likely to mislead the jury to believe that Mr. Meyers is being tried on these other prior bad acts"

7

but the trial court disagreed, responding "that is not true, because they are going to be given a limiting instruction as to exactly how to look at 1101(b) evidence."[4]

Later, when Fleming testified and was asked why Meyers did not have permission to enter her home when she was not present, Fleming responded "Because he has broken in my house many times."[5]

We find the trial court's ruling that the prosecution could introduce testimony from Fleming of prior thefts apparently to show lack of consent, as shown by the court's instruction discussed below, to be an abuse of discretion. Such prior bad acts are not relevant to the central issue in a burglary case: whether Meyers entered Fleming's house "with the intent to commit theft or any felony." (*People v. Anderson* (2009) 47 Cal.4th 92, 101.) While the evidence may prove that Meyers knew he did not have permission to enter Fleming's house when she was not home on the day of the incident, lack of consent by itself is not an element of the offense of burglary.[6] (*People v. Felix* (1994) 23 Cal.App.4th 1385, 1397, citing 2 Witkin & Epstein, Cal.Crim.Law (2d ed. 1988) Without Consent, § 662, pp. 743–744.)

---

[4] When defense counsel asked if he could continue to state his objection, the trial court stated "Your objection has been made. The Court of Appeal are not idiots. I understand exactly what you're saying, and if there is a conviction, so will they."

[5] Defense counsel initially objected without stating grounds and the court overruled the objection; defense counsel then objected based on hearsay, which the court overruled, and then based on inadmissible prior bad acts, which the court stated had already been addressed. The trial court had previously ruled, over defendant's objection, that the prosecution could introduce evidence of Meyers's prior bad acts. Although the trial court's ruling seemed to allow Fleming to testify not only that Meyers had "broken in" in the past, but also that, according to the prosecutor, she believed he had committed "previous thefts," no additional testimony was elicited from Fleming to elaborate on whether items were taken during the "break-ins."

[6] While lack of consent may be relevant to a crime of trespass or other crimes, the only crime charged here was burglary.

## III. Instructional Error

On appeal, we apply a de novo standard of review for claims of instructional error. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581 (*Manriquez*); *People v. Alvarez* (1996) 14 Cal.4th 155, 217.)

Here, the trial court proposed and gave the instruction: "The People presented evidence of other behavior by the defendant that was not charged in this case. [¶] . . . [¶] If you decide that the defendant committed the act, you may but are not required to consider that evidence for the limited purpose of deciding whether or not the defendant knew he had no permission to enter the victim's residence when he allegedly acted in this case. In evaluating this evidence, consider the similarity or lack of similarity between the uncharged act and the charged offense. Do not consider this evidence for any other purpose. Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime."[7]

On appeal, Meyers argues that the limiting instruction was confusing and misleading, and made it reasonably probable that the jury would misuse the evidence. We agree.

The instruction given by the trial court misleads the jury into believing the issue in a burglary case is defendant's knowledge of the lack of consent or permission to enter rather than defendant's intent to commit theft when entering. The trial court's instruction

---

[7] Defense counsel objected to the proposed jury instruction on the evidence of uncharged offenses which was "worded at the end that the defendant knew he had no permission to enter the victim's residence when he allegedly acted in this case" because he did not believe "that's a fair wording of what the instruction is intended to convey." Defense argued that the instruction was intended to convey to the jury "that caution should be used in admitting that evidence because it is highly prejudicial under [section] 352 and that they should only be using the evidence as to that prior bad act, i.e., him entering her residence in the past -- that they should be instructed to use that information for the sole purpose of whether or not consent -- whether or not consent exists, whether consent is there. That is for them to determine." The court disagreed, stating that the witness (referring to Fleming) testified that consent did not exist so the issue was whether defendant knew he had no consent to enter the residence. The court also noted that the cautionary issues were on the second page of the instructions.

9

conflates the elements of intent to commit a crime and permission or consent to enter and is therefore confusing and prejudicial. The People asked for an instruction on Evidence Code section 1101, subdivision (b), on prior bad acts to show specific intent for burglary but the instruction given by the trial court is a hybrid that did not correctly instruct the jury.

## III. Prejudice

After a review of the entire record, we are convinced that the error concerning the prior break-ins and the instructional error resulted in a miscarriage of justice and that there is a reasonable probability that Meyers would have achieved a more favorable result in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *People v. Alcala* (1992) 4 Cal.4th 742, 790-791 [error in the admission or exclusion of evidence following an exercise of discretion under Evidence Code section 352 is tested for prejudice under the *Watson* harmless error standard].) The testimony of the prior break-ins and the police reports regarding prior burglaries was highly prejudicial since the evidence of intent to commit theft at the time of entry into the house is very slim, at best, and nonexistent, at worst.

### DISPOSITION

The judgment of the trial court is reversed.

NOT TO BE PUBLISHED.

CHANEY, J.

We concur:

MALLANO, P. J.

ROTHSCHILD, J.

10