Filed 8/21/14  P. v. Shaw CA3

NOT **TO** **BE** **PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>            Plaintiff and Respondent,<br><br>    v.<br><br>LONDON RAMON SHAW,<br><br>            Defendant and Appellant. | C072207, C073199<br><br>(Super. Ct. No. 09F09120) |

After much deliberation, a jury convicted defendant London Ramon Shaw of second degree murder of Sevon Boles (Pen. Code, § 187, subd. (a)),[1] and sustained enhancement allegations that defendant personally used a handgun (§ 12022.53, subd. (b)) and committed the offense for the benefit of, or in association with, a criminal street gang (§ 186.22, subd. (b)(1)).  The jury acquitted defendant of attempted robbery of Boles.  (§§ 664/211.)  The jury could not reach a decision on whether defendant, or

---

[1] Undesignated statutory references are to the Penal Code.

1

another principal in this gang-related offense, personally and intentionally discharged a firearm causing death. (§ 12022.53, subds. (c), (d), (e).) Nor could the jury reach a decision on any of the similar substantive or enhancement charges against defendant's codefendant, Dominique Givens.

In a retrial involving defendant Shaw, another jury sustained the section 12022.53, subdivision (e) (hereafter section 12022.53(e)) enhancement allegation that one of the principals in this gang-related second degree murder of Boles personally and intentionally discharged a firearm causing death. (See also § 12022.53, subd. (d).)

Sentenced to 15 years to life on the second degree murder and 25 years to life on the section 12022.53(e) enhancement, defendant Shaw, in consolidated appeals from the trial and the retrial, contends (1) the trial court erroneously admitted evidence of another shooting as well as a gang expert's opinion that defendant committed the crime to benefit the gang; (2) the evidence is insufficient to support the gang enhancement; and (3) his counsel was ineffective in failing to timely assert defendant's right to a speedy retrial of the section 12022.53(e) enhancement.

We find no prejudicial error, individually or cumulatively, and shall affirm the judgment.

## FACTUAL BACKGROUND

*Earwitnesses*

There were three "earwitnesses" who heard the shooting and saw matters before and after it.

One of these witnesses was Boles's fiancée. She testified that on June 22, 2009, at 8:00 or 9:00 p.m., Boles grabbed a do-rag and went out of the Sacramento apartment the two of them shared. She then opened their apartment door and saw Boles standing

2

outside with defendant, who was on a mountain bike. Moments later, she heard gunshots and ran outside; Boles had been shot.

During the two days prior to the shooting, defendant and codefendant Givens had been staying at the same apartment complex, in the apartment of the other two earwitnesses. A day before the shooting, one of these witnesses found a handgun, which apparently belonged to defendant (the witness testified the gun was "like a nine-millimeter or something like that"). On the day of the shooting, defendant asked this witness to phone a man who apparently sold marijuana. And just moments before the shooting, defendant got on a bicycle and rode in the direction of where the shooting took place in the apartment complex parking lot. As for the shooting, both of these witnesses testified that upon hearing multiple gunshots outside they went to their apartment balcony, where they saw defendant limping away in one direction (saying, "I got hit") and codefendant Givens running in another; one of the witnesses saw something in defendant's hand (which she assumed was a gun).

***Defendant's San Francisco Shooting and Givens's San Francisco Gun***

A witness testified that on the afternoon of July 16, 2009, defendant was a passenger in a car in the Bayview/Kirkwood area of San Francisco that had stopped for a traffic light. The witness was the front seat passenger in a car that was stopped next to defendant's car; the driver of the witness's car was the father of her three children, who were in the rear seat along with the driver's mother. Defendant fired several shots toward her car, shattering the driver-side window. This witness knew defendant and codefendant Givens as they all had grown up together in the Kirkwood area of San Francisco. She added that defendant was a member of the BNT (Broke Niggas Thievin') gang, and Givens associated with BNT members.

About two months after the Boles shooting, on August 16, 2009, police in San Francisco stopped Givens and found a loaded .22-caliber Beretta pistol in his pocket.

3

### Ballistics and Other Physical Evidence

Nine nine-millimeter Remington Peters Luger casings found at the scene of the San Francisco shooting were fired from the same gun as the two nine-millimeter casings found at the scene of the Sacramento-Boles shooting.

The five .22-caliber casings found at the scene of the Sacramento-Boles shooting were fired from the Beretta seized from Givens in San Francisco. And the two bullets found in Boles's body, as well as another bullet fragment found at that shooting scene, were probably fired from this Beretta.

Boles died from gunshots to his chest and left thigh; he had a baggie of marijuana in one of his pockets.

The police also found two bicycles near Boles.

### Thomas Sims

Thomas Sims, a BNT member with literally a score of charges pending against him, testified pursuant to a prosecution deal. Sims stated that defendant and Givens were also BNT members. When Sims noticed in June 2009 that defendant was limping, defendant explained that he (defendant) and Givens were robbing an individual out of town when a scuffle ensued and Givens accidentally shot defendant while trying to defend him.

### Codefendant Givens's Testimony

Givens testified that he and defendant had stayed at the apartment complex where Boles was shot; that he (Givens) was returning to that complex on a bike (from a trip to the store) when he heard gunshots, and saw defendant and another man run by; that defendant tried to foist two handguns on Givens (a nine-millimeter and a .22-caliber), but Givens refused (although about a month before he was stopped by police, Givens bought a .22-caliber gun from defendant to protect his property).

4

*Defendant's Statement to the Police*

Defendant told the police he was walking with a woman he was visiting in Sacramento (not in the area of the subject apartment complex) when a man approached and asked him where he was from. Defendant replied he "ain't got no gang bang" and walked away. The next thing he knew, he had been shot.

*Gang Expert Evidence*

San Francisco police detective Leonard Broberg testified as an expert on black gangs in San Francisco's Bayview area, including BNT. Broberg opined that, based on his review of the police report and his training and experience, the Sacramento-Boles shooting was committed for the benefit of BNT by enhancing the reputation of the gang and defendant for violence.

The parties stipulated that BNT is a criminal street gang and that defendant was a BNT member on June 22, 2009. Detective Broberg testified Givens was a BNT member.

## DISCUSSION

### I. Evidence of the San Francisco Shooting

Defendant contends the trial court erred prejudicially by allowing the prosecution to admit inflammatory evidence of the July 16, 2009 San Francisco drive-by shooting. We disagree.

In an in limine hearing on this matter, the trial court carefully circumscribed the evidence of this shooting that would be admitted, stating, "We want[] [this evidence] just to be very sanitized. There was a shooting in San Francisco [directed toward the driver of the car], and [defendant] was identified, and the casings match [(i.e., the nine-millimeter casings found at the Sacramento-Boles shooting and the San Francisco shooting)]. That's it." The jury would not hear that the driver had been fatally shot, nor

5

that defendant was present when Givens apparently shot at the driver the day before, nor that this shooting may have been gang related.

And at an Evidence Code section 402 admissibility hearing at which the victim-front passenger witness testified about the San Francisco shooting, the trial court reiterated: "She[] [will] testify in her belief, consistent with prior reports, that she saw [defendant] fire a gun in a car in which she was sitting. And that's the relevance for our purpose because of the casings."

At trial, the front passenger witness testified along these lines, noting the several shots fired at her car. Additionally, she noted that her three children and the driver's mother were in the back seat of the car during the shooting;[2] and the prosecutor introduced into evidence a photograph showing six bullet holes in the car's driver-side door, and a bullet fragment that was found on the rear floorboard.

Defendant argues this additional evidence was inflammatory and impossible to ignore, the proverbial "elephant in the room"; as characterized by defendant, this evidence showed he fired nine shots, unprovoked, at a vehicle occupied by women and children. We disagree that the admission of this additional evidence constitutes reversible error.

First, defendant did not make a specific objection to this additional evidence on the record. A judgment shall not be reversed because evidence was erroneously admitted, unless a timely, specific, legally supported objection to the evidence was made, and the evidence's admission resulted in a miscarriage of justice. (Evid. Code, § 353.)

Second, in the in limine proceedings, the prosecutor had agreed to limit the evidence of the San Francisco shooting in line with a proposal defendant had made—i.e.,

_____

[2] This additional evidence involving the children and the driver's mother was not mentioned in the pretrial evidentiary admissibility hearings.

6

a person claimed to have seen defendant fire the gun, and the casings in the San Francisco shooting matched those in the Sacramento-Boles shooting—*if* defendant agreed that the identification of him was accurate. Otherwise, the prosecutor intended to present evidence to corroborate the front seat passenger witness's testimony regarding the San Francisco shooting. Defendant declined the prosecutor's qualification, believing it would foreclose him from attacking the credibility of the San Francisco witness.

Third, defendant's counsel, during cross-examination, questioned the front passenger witness in a manner that had her explain that after the shooting she checked on her children (to make sure they were all right).

Fourth, the trial court instructed the jury, "If you decide that [defendant] committed the uncharged act [(i.e., the San Francisco shooting)], you may, but are not required to consider that evidence for the limited purpose of deciding whether or not the ballistics evidence demonstrates that the nine-millimeter shell casings recovered from the crime scene in [the Sacramento] case were fired from the same gun. [¶] Do not consider this evidence for any other purpose."

Fifth, and finally, given the casings-based relevance of the San Francisco shooting to the Sacramento shooting, at a minimum the jury was going to hear a witness testify that she saw defendant shoot into a car in which she was a passenger. For defendant, then, there was no escaping from evidence that he had at least once shot at people (presumably, unjustifiably). The additional evidence challenged here was not all that much more inflammatory than this relevant evidence that was certain to be admitted.

We conclude the admission of the challenged additional evidence concerning the San Francisco shooting does not constitute reversible error.

7

## II. Gang Expert's Opinion that the Sacramento-Boles Shooting Committed for BNT's Benefit

Defendant raises two contentions on this subject.

First, defendant contends that Detective Broberg's opinion that defendant committed the Boles murder for the benefit of the BNT gang was improperly admitted because the prosecutor's questioning eliciting this opinion was not phrased as a hypothetical, and the jury was just as qualified as Broberg to determine who murdered Boles.

Weaving through defense counsel's sustained objections, Detective Broberg opined essentially that based on the police report of the Sacramento-Boles shooting and on his training and experience, the crime was committed for the benefit of BNT. Broberg explained, "What happened here in Sacramento, that information got back to San Francisco . . . . So both of the individuals that were involved in this enhanced their reputations by the use of the gun and by shooting the individual that they were attempting to rob."

Detective Broberg did not testify explicitly that defendant committed the Boles murder. Rather, Broberg testified that this murder was committed for the benefit of BNT and he explained the benefit (enhancing the reputation of BNT and defendant for violence). The jury was well aware that it had been empaneled to determine the charges here. In any event, if Broberg crossed the line of expert witness propriety in this regard, defendant was not prejudiced. On the issue of whether a crime is gang related, a gang expert is permitted to respond to hypothetical questions from the prosecutor that closely track the evidence in a thinly disguised manner. (*People v. Vang* (2011) 52 Cal.4th 1038, 1041, 1048 (*Vang*).)

For his second point, defendant asserts there was no admissible reliable evidence to support the basis of Detective Broberg's opinion that the Sacramento-Boles shooting

would benefit the BNT gang and defendant by enhancing their violent reputations; that basis, as noted, was that information of the Sacramento-Boles shooting had gotten back to San Francisco. We disagree.

When defense counsel cross-examined Detective Broberg as to the basis of his opinion, Broberg replied that he relied on what BNT member Sims had told him, on what another San Francisco police officer had told him (Broberg identified this officer and noted this information came from that officer's informant), as well as on other unidentified people in San Francisco who were aware of what had occurred (but Broberg had not talked with those people).

Expert testimony may properly be based on material that is formally inadmissible as evidence so long as that material is of a type reasonably relied upon by similar experts to form their opinions, and is itself reliable. (*People v. Gardeley* (1996) 14 Cal.4th 605, 618.)

As a basis for forming his opinion, Detective Broberg could properly rely on hearsay information received in his conversation with BNT gang member Sims, and from another police officer (who is presumed reliable). (*People v. Thomas* (2005) 130 Cal.App.4th 1202, 1209-1210 [a gang expert may give opinion testimony based upon hearsay statements, including conversations the expert has had with gang members and with the expert's colleagues]; *People v. Vy* (2004) 122 Cal.App.4th 1209, 1223, fn. 9 [accord]; see *People v. Hill* (1974) 12 Cal.3d 731, 761, overruled on another point in *People v. De Vaughn* (1977) 18 Cal.3d 889, 896, fn. 5; see also *People v. Hill* (2011) 191 Cal.App.4th 1104, 1131 & fn. 18.) As for the "other unidentified people" with whom Broberg had not talked, that information may not be reliable; but we deem this information harmless in light of the reliable information Broberg cited and the fact that this unreliable information was presented primarily as a basis for the jury to evaluate Broberg's opinion rather than for the information's truth. (*People v. Thomas*, *supra*,

130 Cal.App.4th at pp. 1209-1210; *People v. Vy*, *supra*, 122 Cal.App.4th at p. 1223, fn. 9; see *People v. Hill*, *supra*, 12 Cal.3d at p. 761; see also *People v. Hill*, *supra*, 191 Cal.App.4th at p. 1131 & fn. 18.)

### III.  Sufficiency of Evidence of Gang Enhancement

Defendant contends the evidence is insufficient to prove the section 186.22, subdivision (b)(1) gang enhancement—i.e., he committed the Sacramento-Boles shooting for the benefit of the San Francisco BNT gang.  We disagree.

In reviewing the sufficiency of the evidence in a criminal case, we review the whole record in the light most favorable to the challenged finding to determine whether it contains evidence that is reasonable, credible, and of solid value from which a reasonable trier of act could have made that finding.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

" 'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the . . . section 186.22, subdivision (b)(1), gang enhancement."  (*Vang*, *supra*, 52 Cal.4th at p. 1048.)  In part II. of the Discussion, *ante*, we concluded Detective Broberg's opinion that the Sacramento-Boles shooting benefited the BNT gang was properly admitted.

In addition to Detective Broberg's opinion, there was other evidence to support this gang enhancement.

Defendant stipulated he was a BNT member on the date of the Boles shooting. Detective Broberg testified codefendant Givens was a BNT member as well.  At a minimum, the evidence showed that defendant and Givens were in Sacramento together at the time and place of the crime.

Upon returning to San Francisco after the Sacramento-Boles shooting, defendant explained his limp to fellow BNT member Sims in the following way.  Defendant and "Dominique" (presumably, Givens) were out of town, "hitting licks or whatever" (i.e.,

10

robbing someone). They came across a noncompliant victim, a tussle ensued, and Givens fired a shot in his defense, accidentally hitting defendant. While defendant and Sims's conversation was not of the usual gang-bragging variety found in the decisions upon which defendant relies in contrast to this conversation, the conversation's participants, idiomatic language, and routine description of horrific facts suggest the Boles shooting was gang related.

Finally, defendant's statement to the police indicated he was shot in a gang context. While this statement did not concern the Boles shooting, it nevertheless comprised a gang shooting context.

We conclude the evidence is sufficient to support defendant's section 186.22, subdivision (b)(1) gang enhancement.

## IV. Speedy Trial of Section 12022.53(e) Enhancement

Defendant contends his counsel was ineffective in untimely asserting defendant's statutory speedy trial right (§ 1382, subd. (a)(2)) on the retrial of the section 12022.53(e) enhancement. We disagree, finding defendant was not prejudiced.

Section 1382, subdivision (a)(2), which implements in part the state constitutional right to a speedy trial, directs a trial court, among other things, to dismiss a mistried felony action when a defendant is not retried on it within 60 days of the mistrial, unless good cause to the contrary is shown. (*People v. Villanueva* (2011) 196 Cal.App.4th 411, 422-423 (*Villanueva*).)

Here, the trial court declared on May 31, 2012, a mistrial on the section 12022.53(e) enhancement, but defense counsel did not move to dismiss the retrial until its commencement in early January 2013. The trial court denied defendant's motion as untimely.

11

To establish ineffective assistance of counsel, defendant must show (1) his counsel failed to act as a reasonably competent attorney, and (2) prejudice resulted (i.e., there is a reasonable probability defendant would have fared better in the absence of counsel's failing—a probability sufficient to undermine confidence in the outcome). (*People v. Gates* (1987) 43 Cal.3d 1168, 1183, overruled on another point in *People v. Williams* (2010) 49 Cal.4th 405, 458-459.) If a defendant cannot show prejudice, a court need not determine whether counsel performed deficiently. (*People v. Hayes* (1990) 52 Cal.3d 577, 608, 612.)

Defendant concedes the law is settled that an enhancement on which a jury has deadlocked may be retried "in isolation" after the jury has convicted on the offense underlying the enhancement. (*People v. Anderson* (2009) 47 Cal.4th 92, 98, 123 (*Anderson*).) Defendant argues, though, that since case law generally does not view an enhancement as existing independently from its underlying offense, an enhancement retrial that is dismissed on speedy trial grounds under section 1382, subdivision (a)(2) cannot be *refiled* without pleading the underlying offense; but the underlying offense, defendant continues, cannot be repleaded because the constitutional principle of double jeopardy precludes such pleading as defendant has already been tried on that offense. Relying on this legal Catch-22, defendant claims his counsel prejudiced him by failing to timely assert defendant's statutory speedy trial right of his section 12022.53(e) enhancement retrial. (§ 1382, subd. (a)(2).) Had defense counsel timely asserted this right, the section 12022.53(e) enhancement retrial would have been dismissed without possible refiling.

For three reasons, we do not see the conundrum that defendant does.

First, our state's highest court, in *Anderson*, has concluded that double jeopardy does not prohibit retrial of a mistried enhancement "*in isolation*" where a jury has convicted the defendant of the offense underlying the enhancement but has deadlocked

12

on the enhancement. (*Anderson*, *supra*, 47 Cal.4th at p. 98, italics added.) This situation is similar to the one before us; in this context, an enhancement can be deemed to exist independently of the underlying offense for the procedural purpose of its retrial (although the trier of fact in the retrial will presumably have to be told the defendant has been found guilty of the underlying offense; and, indeed, this is what happened in defendant's enhancement retrial here). (See *Anderson*, *supra*, 47 Cal.4th at p. 124 (conc. opn. of Moreno, J.).)

Second, defendant cannot claim that the section 1382 speedy trial right applies to the retrial of his mistried section 12022.53(e) enhancement, without also acknowledging that section 1387 applies as well. Sections 1382 and 1387 are part of "a series of statutes, commencing with . . . section 1381, which are a construction and implementation of the California Constitution's speedy trial guarantee (Cal. Const., art. I, § 15)." (*Villanueva*, *supra*, 196 Cal.App.4th at p. 422.) Under section 1387, a single dismissal of a felony action, on speedy trial grounds, is not a bar to a second prosecution of the matter. (*Villanueva*, at p. 417; § 1387, subd. (a); 5 Witkin & Epstein, Cal. Crim. Law (4th ed. 2012) Criminal Trial, § 488, p. 754.) Consequently, even if defense counsel had timely and successfully asserted defendant's speedy trial right of the section 12022.53(e) enhancement, with a resultant dismissal of that enhancement prosecution, the prosecutor, under section 1387, could have retried "in isolation" the enhancement in a second proceeding. Defendant cannot invoke the right provided by section 1382 without meeting the responsibility required by section 1387. Accordingly, defendant was not prejudiced by his counsel's alleged ineffectiveness.

And, third, defendant has not been prejudiced in any broader legal sense. The section 12022.53(e) enhancement retrial did not violate: (1) double jeopardy, because the original jury deadlocked on this enhancement allegation but convicted on its underlying offense; (2) due process, because defendant was originally charged with this

13

enhancement; or (3) any principles of fairness, because nothing was sprung on defendant to his disadvantage—he was simply retried in customary fashion on a matter on which the first jury had deadlocked. (See *Anderson*, *supra*, 47 Cal.4th at pp. 121-122.)

In the end, then, as in *Anderson*, there was " 'no legal or practical barrier' " to prevent the retrial of defendant's section 12022.53(e) enhancement had his counsel successfully moved to dismiss the first retrial on speedy trial grounds. (*Anderson*, *supra*, 47 Cal.4th at p. 121.) Consequently, defendant cannot show his counsel was ineffective because he cannot show his counsel's alleged ineffectiveness prejudiced him.

## DISPOSITION

The judgment is affirmed.


                                                          BUTZ             , J.



We concur:



       BLEASE            , Acting P. J.



       HOCH            , J.


14