Filed 11/28/23  P. v. Morrison CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SCOTT ANDREW MORRISON,<br><br>    Defendant and Appellant. | C097455<br><br>(Super. Ct. No. 21FE017419) |

A jury found defendant Scott Andrew Morrison guilty of two counts of first degree burglary.  The trial court sentenced defendant to six years, doubled to 12 years, on one count of first degree burglary and a concurrent four years on the second count of first degree burglary.  On appeal, defendant contends the evidence was insufficient to support his conviction on the first count of first degree burglary.  We will affirm the judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual History*

At approximately 3:00 a.m. on October 13, 2021, K.J. awoke in her bedroom because she heard defendant breaking into her home. K.J.'s doors were locked, but she left the dog door in the kitchen open for her dog. K.J. had also left a light on in the living room by the front door. While still lying in bed, K.J. saw defendant walking towards her with a large stick. K.J. grabbed her shotgun and fired it, hitting her bedroom door frame and defendant. K.J. chased defendant, who dropped the stick in the dining room and struggled to open the locked doors. When K.J. yelled at defendant to get out, he fled through the unlocked dog door. After defendant fled, K.J. called a nonemergency line, which redirected her call to 911. Police officers who arrived on the scene went into K.J.'s backyard and saw that a part of her fence was broken and there were items laying around that did not belong to her. These items included a plaid jacket, an Athletics hat, a maroon high-heeled shoe, and a gallon jug of water.

Responding officers spoke with K.J. and her neighbors. One neighbor saw a man in his backyard earlier that evening and another had home video surveillance footage of someone on his front porch. Officers continued to search the neighborhood and neighbors' backyards throughout the day. At approximately 6:00 p.m. that day, an officer searched the backyard of K.J.'s neighbor J.C. After the officer left, J.C.'s dog started barking, so J.C. looked through his backyard and garage. When J.C. opened the side door to his garage, defendant sprang down from the rafters and ran towards J.C. Defendant and J.C. wrestled with the side door, but J.C. was eventually able to close it. When J.C. closed the side door, defendant lifted the garage door and fled. In the rafters, defendant left behind two bottles of tea from J.C.'s refrigerator, one of which was half empty, and a shirt from J.C.'s dryer. J.C. chased after defendant, and another neighbor, J.W., followed defendant in her car. J.W. called the police and followed defendant until the police arrested him. Officers saw that defendant had shotgun pellets in his arm.

2

When one of the officers spoke with defendant about being in K.J.'s home, defendant told him he went in to get cans.

At trial, defendant testified that he was homeless and visiting the area around K.J.'s home to see friends and run errands to get clothes and food. Defendant had been assaulted a few days prior to breaking into K.J. and J.C.'s residences and was robbed of his linens, so he needed to replace them. Defendant admitted that prior to entering K.J.'s home, he entered two other yards looking for cans to exchange for money. When defendant went into K.J.'s backyard to look for cans and did not find any, he realized he was tired. Defendant claimed that he believed K.J.'s home was abandoned, because there were no lights on and the home was in "upheaval." Defendant decided to enter the residence to sleep because he had "homeless rights." When the prosecutor asked defendant if he thought it was "legal to [commit] burglary," defendant responded: "I find it to be meritorious and I find it to be substantiated." Defendant admitted he suffered a previous conviction for second degree burglary in 2019.

When police initially detained defendant, K.J. went to the scene and identified him as the person that broke into her home. At trial, J.C. identified defendant as the man on the neighbor's home video surveillance footage. The jury was shown pictures of K.J.'s backyard and house, and K.J. disagreed that her home looked abandoned. When the prosecutor showed defendant pictures of K.J.'s home, defendant stated that it must be a blueprint of a different home because he did not recognize it. Defendant testified that he did not remember the backyard either and suggested that there must have been another burglar in the neighborhood. Defendant denied bringing a large stick into K.J.'s home and suggested that K.J. planted it in her living room to set him up. Defendant also denied leaving behind any of the items found in K.J.'s yard, including the high-heeled shoe and water jug. Defendant further denied taking the shirt found in J.C.'s garage rafters from J.C.'s dryer.

3

## B. Charges

The Sacramento County District Attorney charged defendant with two counts of first degree burglary (Pen. Code, § 459),[1] and alleged that defendant suffered a prior serious felony conviction (§ 1192.7, subd. (c)) and prior strike conviction (§§ 667, subds. (b)-(i), 1170.12).  The district attorney also alleged the following aggravating factors:  (1) the victim, K.J., was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)),[2] (2) defendant engaged in violent conduct that indicates a danger to society (rule 4.421(b)(1)), and (3) defendant served a prior term in prison or county jail (rule 4.421(b)(3)).

## C. Verdict and Sentence

The jury found defendant guilty of both counts of first degree burglary and found true the aggravating factor that K.J. was particularly vulnerable.  In bifurcated proceedings, the trial court found true the aggravating factors that defendant engaged in violent conduct that indicates a danger to society and served a prior prison term, and the trial court found true that defendant suffered a prior conviction and strike conviction. Declining to strike the prior strike, the trial court sentenced defendant to the upper term of six years, doubled to 12 years, for the burglary of K.J and a concurrent four-year term on the burglary of J.C.

### DISCUSSION

*Substantial Evidence of Intent to Commit Theft*

Defendant asserts the evidence was insufficient to support his conviction of first degree burglary of K.J.  Specifically, defendant argues that no substantial evidence

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Undesignated rule references are to the California Rules of Court.

4

supports the jury's finding that defendant entered K.J.'s dwelling with the specific intent to commit theft. We disagree.

"In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or special circumstance beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.] We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.)

"Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." (*People v. Bloom* (1989) 48 Cal. 3d 1194, 1208.) "Whether the evidence presented at trial is direct or circumstantial, . . . the relevant inquiry on appeal remains whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Towler* (1982) 31 Cal.3d 105, 118, italics omitted.)

"A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

A defendant has committed first degree burglary if he enters a structure currently being used for dwelling purposes with the intent to commit theft or any felony. (*People v. Anderson* (2009) 47 Cal.4th 92, 101.) As the jury here was instructed, to establish

5

theft, the prosecution was required to prove defendant: 1) took or intended to take possession of someone else's property without the owner's consent; 2) intended to deprive the owner of it permanently; and 3) moved or intended to move the property, even a small distance, and keep it for any period of time. (CALCRIM No. 1800.) Here, defendant does not contend that he did not enter K.J.'s home or that K.J.'s home was used for dwelling purposes. Rather, defendant's sole contention on appeal is that there was insufficient evidence to support a finding that he had the intent to commit theft when he entered K.J.'s home.

Viewed in the light most favorable to the judgment, there was substantial evidence for the jury to reasonably infer that defendant entered K.J.'s residence with the intent to commit theft based on defendant's actions before, during, and after the crime. Defendant was robbed of his linens a few days before the crime, and he was searching for food and clothes to replace what was stolen from him. Defendant entered two other yards shortly before entering K.J.'s home to find cans he could take and exchange for money. Defendant entered K.J.'s home with a large stick he found in K.J.'s yard, which supports the inference that he entered with the intent to commit theft and planned on using the stick to facilitate that theft in some manner. When defendant broke into J.C.'s garage later that day, he took a shirt from J.C.'s dryer and tea from J.C.'s refrigerator. After officers arrested defendant, he told one of the officers that he had gone into K.J.'s home to get cans. Defendant entered K.J.'s home, because he believed he had "homeless rights." Defendant also believed the burglary was "meritorious" and "substantiated." Based on the evidence of defendant's statements and actions, a jury reasonably could infer that defendant entered K.J.'s home with the intent to commit theft.

DISPOSITION

The judgment is affirmed.

                                      \s\                           ,
                                       Krause, J.

We concur:

       \s\                ,
Robie, Acting P. J.

       \s\             ,
Mauro, J.