Filed 1/29/26 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ENRIQUE AGUILAR,<br><br>    Defendant and Appellant. | D083172<br><br>(Super. Ct. No. SCD283329)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed January 2, 2026 be modified as follows:

1.  On page 9, after the first sentence of the first full paragraph ending "absolved of that presumption" and citation, insert the following sentence and citation:

> Specifically with respect to certain types of alleged juror behavior listed in section 231.7, subdivision (g) that "have historically been associated with improper discrimination in jury selection," the presumption can be rebutted "if the trial court is able to confirm that the asserted behavior occurred." (*Barnes*, at p. 578.)

After the sentence that ends "that the asserted behavior occurred" noted above, add new footnote 7 with the following language, which will require renumbering of all subsequent footnotes:

7 Subdivision (g) of section 231.7 provides:
  (1) The following reasons for peremptory challenges have historically been associated with improper discrimination in jury selection:
     (A) The prospective juror was inattentive, or staring or failing to make eye contact.
     (B) The prospective juror exhibited either a lack of rapport or problematic attitude, body language, or demeanor.
     (C) The prospective juror provided unintelligent or confused answers.
  (2) The reasons set forth in paragraph (1) are presumptively invalid unless the trial court is able to confirm that the asserted behavior occurred, based on the court's own observations or the observations of counsel for the objecting party. Even with that confirmation, the counsel offering the reason shall explain why the asserted demeanor, behavior, or manner in which the prospective juror answered questions matters to the case to be tried.

2. On page 9, the paragraph following section B. is modified to read:

Aguilar's main argument for claiming entitlement to a new trial under section 231.7 is that the court's findings concerning Juror 1 are not supported by substantial evidence. Alternatively, Aguilar asserts that the People did not rebut the presumption that the basis for their peremptory challenge was invalid. The People respond by suggesting the trial court's finding that Juror 1 "struggle[d] with the concept of intent" was supported by the record, and that overruling Aguilar's objection was proper considering the totality of the circumstances. They also maintain Aguilar forfeited any claim that the peremptory challenge of Juror 1 was presumptively invalid under section 231.7, subdivision (g)(1)(C), the only provision that logically could apply, for failure to raise it below. But in any event, according to the People, the trial court's agreement with the prosecutor that Juror 1 had "some difficulty" answering questions about the In-N-Out hypothetical shows that the presumption was rebutted.

2

3. The second paragraph on page 10 is modified to read as follows:

> The prosecutor in this case offered a single reason for exercising a peremptory challenge on Juror 1—that she "kept going back and forth with her answers" and therefore was "struggling" with the concept of Jane's intent to eat the burger. Following the procedure set forth in subdivision (g) of section 231.7, the trial court expressly agreed that the juror's answers were "equivocal" and indicative of confusion on the issue of intent, impliedly finding the presumptive invalidity of the prosecutor's reason was rebutted. Based on this rebuttal finding and the unspecified totality of the circumstances, the court determined that an objectively reasonable person would not find Juror 1's perceived membership in a cognizable group to be a factor in the People's exercise of this peremptory challenge.

4. On page 10, the first sentence of the last paragraph that begins "On a more granular level" and footnote 7 are deleted and replaced with the following sentence:

> On a more granular level, the justification provided by the prosecutor—"confused answers" by the juror—is presumptively invalid pursuant to subdivision (g)(1)(C) of section 231.7 unless the trial court "is able to confirm that the asserted behavior occurred, based on the court's own observations or the observations of counsel for the objecting party."

5. The first full sentence on the top of page 11 that begins "And here," is modified to read:

> And here, although the court purported to find the presumptive invalidity of the reason rebutted by confirming the prosecutor's characterization of Juror 1's responses, the record paints a decidedly different picture of those responses that is at odds with both the trial court's findings and what the prosecutor thought of the responses in the moment.

3

6. After the first full paragraph on page 12 that ends "with nothing but the presumption," insert the following paragraph:

> Relying on *People v. Garcia* (2025) 115 Cal.App.5th 92, *People v. Hernandez* (2025) 115 Cal.App.5th 256 (*Hernandez*) and *People v Jaime* (2023) 91 Cal.App.5th 941 (*Jaime*), the Attorney General suggests Aguilar forfeited any claim that the prosecutor relied on a presumptively invalid reason by failing to make a second, more targeted objection that specifically referred to the presumption *after* the prosecutor stated her reasons for challenging Juror 1. But as we explained in *Caparrotta,* the objecting party satisfies its burden by objecting to the peremptory challenge, after which the burden shifts to the party exercising the challenge to "state the reasons" why it was exercised. (*Caparrotta*, *supra*, 103 Cal.App.5th at p. 893.) "It is then up to the trial court to correctly apply the procedure set forth in section 231.7 when deciding whether to sustain the objection" (*ibid.*), and this includes determining whether the proffered reason is presumptively invalid.

After the paragraph noted above ending "reason is presumptively invalid," add a new footnote with the following language, which will require renumbering of all subsequent footnotes:

> [Fn.]  In any event, we find all three of the cases cited by the People readily distinguishable.  In *Hernandez,* when the defendant objected that the prosecutor was using peremptory challenges to exclude "young jurors," the court concluded that youth was not a protected characteristic. (115 Cal.App.5th at p. 265.)  Then, for the first time on appeal, the defendant argued that the prosecutor improperly excused jurors who were Hispanic and male. The court found this contention forfeited because it had not been raised in the trial court. (*Id.* at pp. 267–268.)  Here, Aguilar has always claimed that the prosecutor improperly used a peremptory challenge to exclude a Latina.

4

In *Garcia,* both the trial and appellate courts determined that the "reasons offered by the prosecutor . . . are not among the 13 presumptively invalid reasons set forth in subdivision (e) [of section 231.7]." (*Garcia*, *supra*, 115 Cal.App.5th at p. 106.)  In contrast here, the trial court did not decide that the prosecutor's reason was *not* presumptively invalid.  Rather, it expressly agreed with the prosecutor's characterization of the juror's behavior, thus rebutting the presumption.

Finally in *Jaime*, the appellate court *rejected* the Attorney General's forfeiture argument on grounds that any more specific objection would have been futile.  (91 Cal.App.5th at pp. 946–947.)

7.  After the paragraph noted in item 6 above ending "reason is presumptively invalid," insert the following paragraph:

Indeed, that is exactly what the trial court did here. Following the applicable procedures in subdivision (g), it first purportedly confirmed the behavior alleged by the prosecutor, rebutting the presumption, and then applied a totality-of-the-circumstances analysis to overrule the objection.  In any event, after the trial court had already applied a subdivision (g) analysis, it was unnecessary and ultimately pointless for Aguilar's counsel to have made a second objection based on the presumptive invalidity of the prosecutor's reason.  That was, in effect, water under the bridge and any further objection would have been the epitome of futility.  (*Jaime*, *supra*, 91 Cal.App.5th at p. 946 [futility exception to forfeiture rule apples when "it is clear the court will not make a correction despite awareness of its error"].) The fundamental problem is that there was no evidence to support the prosecutor's asserted reason for the challenge to Juror 1.

There is no change in judgment.

The petition for rehearing is denied.

DATO, Acting P.J.

Copies to:  All parties

5

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083172 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD283329) |
| ENRIQUE AGUILAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carlos O. Armour, Judge.  Reversed and remanded.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorneys General, Eric A. Swenson, Kathryn Kirschbaum and Marvin E. Mizell, Deputy Attorneys General for Plaintiff and Respondent.

Enrique Aguilar was convicted by a jury of multiple offenses based on his involvement in a shootout with San Diego Police Department (SDPD) officers.  Before trial began, the People exercised a peremptory challenge to strike a prospective juror who the prosecutor thought was unable to grasp the concept of intent.  Aguilar objected on the ground that the People were trying to exclude Latinas, Latinos, and persons of Hispanic ethnicity from the jury.[1]  The court adopted the People's rationale for the challenge as a finding of fact and overruled the defendant's objection.

Aguilar claims on appeal that this finding was not supported by substantial evidence.  We agree.  The record is devoid of evidence that this juror was confused about intent and in fact shows the contrary—she understood the concept and appropriately answered the prosecutor's questions.  Under the governing statutory authority, we must reverse the judgment and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

Around mid-afternoon on September 16, 2019, Aguilar led a SDPD officer on a foot chase during which he brandished a gun the officer was afraid he might use.  This pursuit ended in an exchange of gunfire between Aguilar and two other officers.  None of the officers was hit, but Aguilar suffered a gunshot wound to his hip.  One of the bullets fired from Aguilar's direction struck the door of a store a few yards behind the officers.

In September 2023, a jury convicted Aguilar of two counts of attempted voluntary manslaughter (Pen. Code, §§ 664, subd. (a) & 192), which were

---

[1]     We use the terms "Hispanic," "Latina," and "Latino" as the parties and trial court used them.  No disrespect is intended to any individual or ethnic group.

2

lesser included offenses of attempted murder of a police officer (*id.*, §§ 664, subd. (a) & 187). He was also found guilty of three counts of assaulting a peace officer with a semiautomatic firearm (*id.*, § 245, subd. (d)(2)) and one count each of shooting at an occupied building (*id.*, § 246), possessing methamphetamine while armed with a loaded and operable firearm (Health & Saf. Code, § 11370.1, subd. (a)), and being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)). After considering the jury's true findings on various gun allegations and Aguilar's admissions regarding various prior felony convictions, the court sentenced him to prison for 166 years to life, consisting of a determinate term of 77 years plus an indeterminate term of 89 years to life.

The dispositive issue in this appeal arises from the jury selection process. Before the attorneys were allowed to question the members of the venire, the trial judge asked its first 21 members to answer aloud from a juror questionnaire. Prospective juror number 1 (Juror 1), who the attorneys and the judge thought was a Latina[2] woman based on her appearance and surname, disclosed that she was a paralegal student. Prospective juror number 4 (Juror 4), whose ethnicity is not discernable from the record, was an epidemiologist and also a husband and father.

After the court finished, the attorneys were allowed to ask some questions. The prosecutor began with a hypothetical she thought would reveal the potential jurors' understanding of the concept of intent, which in some form was an element of each charged offense. The hypothetical described a person standing in a long line at an In-N-Out Burger restaurant

---

[2]     The questionnaire did not ask the prospective jurors to identify their races or ethnicities.

during a busy lunch rush.  The prosecutor first addressed her hypothetical to Juror 4:

> "[Prosecutor:]  You see this person go all the way up to the front.  You see them open either their wallet or a purse, depending on the person.  You see them take a seat.  Find a booth.  They take a seat.  They go and get the little basket, that little red basket with the burger and fries and drink, and they sit down.  And at that point in time, what do you think that person is intending to do?
>
> "[Juror 4:]  It'd seem reasonable to assume that they were going to make a purchase.
>
> "[Prosecutor:]  Okay.  And if you see this person go collect their little red tray with the burger, with the fries, with the drink, and they find a booth and they sit down and they just stare at it, in that moment what do you think that person is going to do?  What do you think they're intending to do?
>
> "[Juror 4:]  I assume they're going to eat the meal.
>
> "[Prosecutor:]  Okay.  Why do you think that?
>
> "[Juror 4:]  I have to explore why I think that, but I assume it's because they purchased it and they're looking down at it.  Looked like they're intending to eat it.  Yeah.
>
> "[Prosecutor:]  And let me ask you this:  You then see this person—we'll just call this person 'Jane.'  You see Jane. You see Jane, you know, open up the napkin—right?—take a sip of the drink, and then pick up the burger, and go like this to the mouth.  Right?  What do you think she's going to do?  What do you think Jane's going to do in that moment?
>
> "[Juror 4:]  What you're describing, it sounds like someone's intending to take a bite of the burger.
>
> "[Prosecutor:]  Okay.  If, in that moment, you turn to talk to your coworker and then you turn around and you don't see Jane anymore but you see her cheeseburger and her fries that are untouched and you see her drink—at that point,

4

she didn't just disappear.  Right?  You assume she left.  [¶] At that point in time, would you change your opinion as to whether or not Jane walked into In-N-Out with the intent to purchase a cheeseburger and eat a cheeseburger?

"[Juror 4:]  No.  In that scenario you're describing, I would assume that she ate the cheeseburger.

"[Prosecutor:]  If you see the cheeseburger in the basket, though.  So you see Jane leave In-N-Out, but then you turn back to her booth and you see the cheeseburger, and it's intact.  [¶]  Does that change your opinion as to whether or not Jane walked into In-N-Out with the intention of eating that cheeseburger?

"[Juror 4:]  No, not really, no.

"[Prosecutor:]  Why not?

"[Juror 4:]  It's just such a mundane activity.  It seems like—I would have assumed that she second-guessed it for some other reason.

"[Prosecutor:]  Does anybody disagree with Juror Number 4?  For the record, I see everybody kind of shaking their heads, saying 'no.' "

The prosecutor then immediately asked Juror 1 about this scenario:

"[Prosecutor:]  Juror Number 1, if everything I described for Juror Number 4—you turn around to talk to your coworker, you turn back, and Jane is gone but you see her food hasn't been touched, it's intact, at that point does your opinion change as to whether or not Jane walked into In-N-Out for the purpose of eating a cheeseburger?

"[Juror 1:]  No.

"[Prosecutor:]  Okay. Why?

"[Juror 1:]  Well, usually people are forgetful in that situation, so maybe she went out to go get something.  So I

wouldn't assume that her intention was not to eat the cheeseburger.

"[Prosecutor:] So you believe that her intention—she meant to eat the cheeseburger, she wanted to eat the cheeseburger, but something may have happened that caused her to leave her cheeseburger on the table?

"[Juror 1:] Correct.

"[Prosecutor:] Okay. Anybody disagree with that? I see everybody kind of shaking their heads, saying 'no.' "

The prosecutor moved to other topics and did not revisit this hypothetical with other potential jurors.

After voir dire was complete, the People used a peremptory challenge to strike Juror 1. Aguilar objected on the ground that the prosecutor was trying to remove Hispanic or Latina jurors, of which he thought there were no more than three among the jurors being questioned. Prior to challenging Juror 1, the People used a peremptory challenge on prospective juror number 22 (Juror 22), who Aguilar thought was Hispanic.[3] Although Aguilar did not object to the challenge of Juror 22, he thought these two peremptory challenges taken together revealed the People's strategy of excluding persons of these ethnicities from the jury.

The prosecutor justified her challenge of Juror 1 by recalling that she "asked almost all the jurors in the panel . . . whether or not an individual who gets in line, who orders a burger, who sits down, who takes the burger and puts it to the mouth but then leaves the restaurant, whether or not they had the intent to eat that burger." She thought Juror 1 "kind of kept going back and forth with her answers." The prosecutor explained further: "When I

_____

[3]     Both the judge and the prosecutor self-identified as Latino and Latina, respectively. Neither thought Juror 22 was a Latina.

6

asked her specifically, 'Well, if you saw Jane leave but you still saw the burger,' the answer that she provided, it didn't make sense to me." She went on: "I can't remember her exact words, because I didn't write her exact—I don't have quotes, but I do recall that when she was answering and I was going through my questioning as to whether—to determine whether or not she can analyze whether a person can formulate the intent to do something, she was, in my opinion, struggling to do so."

Defense counsel responded that other jurors had trouble understanding the In-N-Out hypothetical, yet the People only struck Juror 1 for the perceived inability to understand it. He recalled, "[S]he answered the question, I think, the way that [the prosecutor] was searching, which was that, yes, there was intent. And I do think she used a double negative in giving her answer, which might have thrown [the prosecutor] off." He added that Juror 1 "answered just like any of the other jurors answered."

The court overruled Aguilar's objection, explaining that "[a]fter evaluating the reasons given to justify the peremptory challenge, in light of the totality of the circumstances, . . . there's not a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or a perceived membership in any of those groups as a factor in the use of the peremptory challenge." The court continued: "The reason for the rulings are [*sic*]—I'm incorporating what the People said about their reasons for using a peremptory challenge for [Juror 1]. . . . [¶] [H]er answers were equivocal. I thought she was a little bit confused on the issues as well. Intent is an important issue and probably one of the primary issues in this case."

## DISCUSSION

### A. *Framework for Resolving Objections to Peremptory Challenges*

Code of Civil Procedure[4] section 231.7, effective in criminal trials since January 1, 2022, was enacted "to establish 'a new process for identifying unlawful bias in the use of peremptory challenges during jury selection' because studies showed that the existing *Batson/Wheeler*[5] analysis . . . was inadequate to prevent racial discrimination."[6] (*People v. Jimenez* (2024) 99 Cal.App.5th 534, 539–540.) The statute "prohibits the 'use [of] a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups'." (*Id.* at p. 540.) Whereas an objection under *Batson/Wheeler* could be sustained only if purposeful discrimination were found (*People v. Rhoades* (2019) 8 Cal.5th 393, 423), "[d]iscrimination in violation of this section need not be purposeful [and] may involve 'unconscious bias,' " which " 'includes implicit and institutional biases' " (*Jimenez*, at p. 540).

In response to an objection to the exercise of a peremptory challenge, the challenging party "shall state the reasons the peremptory challenge has been exercised." (§ 231.7, subd. (c).) "It is then up to the trial court to correctly apply the procedure set forth in section 231.7 when deciding

---

4    Undesignated statutory references are to the Code of Civil Procedure.

5    See *Batson v. Kentucky* (1986) 476 U.S. 79, and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Batson/Wheeler*).

6    Effective January 1, 2026, section 231.7 was amended to apply in certain civil cases. (See § 231.7, subd. (k), amended by Stats. 2025, ch. 656, § 1 (2025–2026 Reg. Sess.).)

8

whether to sustain the objection." (*People v. Caparotta* (2024) 103 Cal.App.5th 874, 893 (*Caparotta*).)

The correct statutory procedure depends on the reasons provided. Subdivisions (e) and (g) of section 231.7 describe "presumptively invalid reasons for the exercise of a peremptory challenge" and set out "distinct process[es] by which a court determines whether a presumptively invalid reason can be absolved of that presumption." (*People v. Barnes* (2024) 107 Cal.App.5th 560, 578.) If the presumption is not rebutted, the objection must be sustained. (*Ibid.*) Alternatively, if the challenging party overcomes the presumption—or if the party does not rely on a presumptively invalid basis—the court "evaluate[s] the reasons given to justify the peremptory challenge in light of the totality of the circumstances." (§ 231.7, subd. (d)(1).) In any event, the court "shall consider only the reasons actually given and shall not speculate on, or assume the existence of, other possible justifications." (*Ibid.*)

## B.     *The Resolution of Aguilar's Objection*

Aguilar's main argument for claiming entitlement to a new trial under section 231.7 is that the court's findings concerning Juror 1 are not supported by substantial evidence. Alternatively, Aguilar asserts that the People did not rebut the presumption that the basis for their peremptory challenge was invalid. The People respond by suggesting the trial court's finding that Juror 1 "struggle[d] with the concept of intent" was supported by the record, and that overruling Aguilar's objection was proper considering the totality of the circumstances. They also maintain Aguilar forfeited any claim that the peremptory challenge of Juror 1 was presumptively invalid for failure to raise it below, but in any event, the trial court's agreement with the prosecutor that she had "some difficulty" answering questions about the In-N-Out hypothetical shows that the presumption was rebutted.

9

"The denial of an objection made under this section shall be reviewed by the appellate court de novo, with the trial court's express factual findings reviewed for substantial evidence." (§ 231.7, subd. (j).) Our review is limited to the reasons stated by the trial court. (*Ibid.*) Thus, we may "not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge." (*Ibid.*) The trial court's mistaken overruling of an objection to a peremptory challenge is not subject to harmless error review; rather, any such error "shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Ibid.*)

The prosecutor in this case offered a single reason for exercising a peremptory challenge on Juror 1—that she "kept going back and forth with her answers" and therefore was "struggling" with the concept of Jane's intent to eat the burger. The trial court agreed, finding her answers "equivocal" and indicative of confusion on the issue of intent. Based on this finding and the unspecified totality of the circumstances, the court determined that an objectively reasonable person would not find Juror 1's perceived membership in a cognizable group to be a factor in the People's exercise of this peremptory challenge.

At a broad level of generality, the circumstances of this case provide a cautionary tale for lawyers crafting hypothetical questions they hope will skillfully expose latent biases of prospective jurors. Unless carefully constructed and vetted across a wide range of people with different backgrounds and experiences, they run the risk of introducing confusion rather than fostering clarification of the issues in the case.

On a more granular level, the justification provided by the prosecutor— juror confusion—is presumptively invalid pursuant to subdivision (g)(1)(C) of section 231.7 unless the trial court "is able to confirm that the asserted

10

behavior occurred, based on the court's own observations or the observations of counsel for the objecting party."[7] And here, although the court purported to confirm the prosecutor's characterization of Juror 1's responses, the record paints a decidedly different picture of Juror 1's responses that is at odds with both the trial court's findings and what the prosecutor thought of the responses in the moment.[8] Juror 1 stated unequivocally that she agreed with Juror 4's conclusion that Jane walked into In-N-Out with the intent to eat a burger, and she answered all the prosecutor's questions clearly and consistent with that belief. To the extent there was any confusion created by Juror 1's use of a double-negative in one of her responses, she resolved it promptly by responding with a simple "correct" to the follow-up question of whether she believed that Jane intended to eat the burger. This last answer was clear enough to the prosecutor that she asked the rest of the prospective

[7]     Citing *People v Jaime* (2023) 91 Cal.App.5th 941, the Attorney General suggests Aguilar forfeited any claim that the prosecutor relied on a presumptively invalid reason by failing to make a more targeted objection that specifically referred to the presumption. But as we explained in *Caparotta,* the objecting party satisfies its burden by objecting to the peremptory challenge, after which the burden shifts to the party exercising the challenge to "state the reasons" why it was exercised. (*Caparotta, supra,* 103 Cal.App.5th at p. 893.) "It is then up to the trial court to correctly apply the procedure set forth in section 231.7 when deciding whether to sustain the objection" (*ibid.*), and this includes determining whether the proffered reason is presumptively invalid. *Jaime,* which declined to find forfeiture because a more specific objection would have been futile, is not to the contrary.

[8]     The prosecutor's failure to take notes may also explain her mistaken recollection that she "asked almost all the jurors in the panel" about the In-N-Out hypothetical when, in fact, she only made specific inquiries of Jurors 1 and 4. Because the erroneous denial of an objection to a peremptory challenge is deemed prejudicial and requires reversal of the judgment (§ 231.7, subd. (j)), it should perhaps go without saying that it is in everyone's best interest to make a clear and complete record for appellate review.

jurors whether they agreed with it. And, for that matter, the prospective jurors apparently understood Juror 1's answer because none indicated any disagreement.[9]

As a result, the trial court's unexplained finding of "confusion" on Juror 1's part is entirely unsupported by substantial evidence. And because juror confusion is a presumptively invalid reason for a peremptory challenge, the absence of evidence to support the trial court's confirmation of Juror 1's alleged behavior leaves us with nothing but the presumption.

Applying de novo review in light of the presumption, we conclude the prosecution failed to demonstrate "that an objectively reasonable person would view the [proffered] rationale as unrelated to [Juror 1's] . . . ethnicity." (§ 231.7, subds. (e) & (j).) Accordingly, we hold that the trial court erred in overruling Aguilar's objection. We therefore reverse the judgment and remand the case for a new trial.[10] (§ 231.7, subd. (j).)

_____

[9] The record may suggest that the People and/or the court either mixed up Juror 4's and Juror 1's responses or conflated them, as some of the former's answers to the prosecutor's questions appear to indicate confusion and uncertainty.

[10] We need not reach the other issues Aguilar raises. He alleges the court erred in sentencing him on convictions we have reversed and in the jury instructions it gave concerning the attempted murder charges for which he was acquitted and cannot be retried. (*People v. Anderson* (2009) 47 Cal.4th 92, 104 [double jeopardy bars retrial following acquittal].) Aguilar also challenges (1) the court's exclusion of certain evidence and (2) the sufficiency of the evidence supporting his conviction of shooting at an occupied building. We decline to review these issues because in seeking and obtaining a reversal on a ground other than insufficiency of the evidence, Aguilar has " ' "assent[ed] to all the consequences legitimately following such reversal and consents to be tried anew." ' " (*People v. Eroshevich* (2014) 60 Cal.4th 583, 591.) One such consequence is that the parties may advance different positions and rely on different evidence in a second trial. (*People v. Barragan* (2004) 32 Cal.4th 236, 247.)

## DISPOSITION

The judgment is reversed and the case is remanded for a new trial.

DATO, Acting P. J.

WE CONCUR:

DO, J.

RUBIN, J.

13